NATIONAL LIFE INSURANCE COMPANY OF THE UNITED STATES OF AMERICA *v.* NATIONAL LIFE INSURANCE COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SEVENTH CIRCUIT.

No. 162.    Argued March 9, 1908.—Decided April 6, 1908.

Even if the power to review the determination of an executive department exists, where the complainant is merely appealing from the discretion of the department to the discretion of the court, the court should not interfere by injunction where the complainant has no clear legal right to the relief sought.

Where a corporation has taken the same name as that of an older corporation the fact that it has a greater quantity of mail matter does not justify the court in interfering with a special order of the Post Office Department directing the delivery of matter not addressed by street and number in accordance with Par. 4 of § 645 of the General Regulations of 1902 to the one first adopting the name in the place of address.

THE appellant commenced this suit in equity against the defendants on the eighteenth day of July, 1905, in the Circuit Court of the United States for the Northern District of Illinois,

Eastern Division, for the purpose of obtaining an injunction against the corporation defendant, restraining it and its manager, the defendant D. G. Drake, at Chicago, Illinois, from receiving, and the Chicago postmaster and the letter carriers named as defendants from delivering, mail-matter directed to "National Life Insurance Company, Chicago, Illinois," to the company so designated, on the ground that, in fact, such mail-matter was intended for the complainant, even though not addressed to it. An answer of the corporation defendant and that of its manager was duly filed and served, to which the complainant filed a replication. After a hearing it was adjudged by the Circuit Court "that the defendant, National Life Insurance Company, is entitled to have delivered to it such mail as may come to the post-office at Chicago addressed 'National Life Insurance Company, Chicago, Illinois,' unless such mail shall also bear the street number of the office of the National Life Insurance Company of the United States of America, or shall be in some other way designated, upon the exterior of the envelope or wrapper containing such mail-matter, or otherwise, as designed for the National Life Insurance Company of the United States of America, and not for the National Life Insurance Company. Wherefore, it is further ordered, adjudged and decreed that the bill of complaint herein, as amended, be and the same is dismissed for want of equity." This judgment was affirmed by the Circuit Court of Appeals.

Upon the trial, among others, the following facts were agreed upon:

An insurance company known as the National Life Insurance Company of the United States of America was duly incorporated by special act of Congress in the year 1868. Its chief office and place of business was, by its charter, located in the city of Washington, District of Columbia. The corporation thereupon entered upon the life insurance business and continued to transact that business and to seek new business of that kind until 1881.

The company was duly admitted to do business in the State of Illinois on or about August 16, 1868, and in the year.1874 it established in the city of Chicago, Illinois, what is denominated its principal branch office, and thereafter continuously transacted in the city of Chicago nearly all of the business usually transacted at the home office of an insurance company.

In 1881 the company ceased to solicit or to write any new business, and such omission continued until 1900, and during that period the business transacted by it at its principal branch office.in Chicago was such as was incident to the care and preservation of the business written prior to 1881. Between those years the company was suffering a natural liquidation, its outstanding policies decreasing from 5,966 in number to 1,317, while its policies in Illinois had decreased from 394 to 100. In the year 1900 the company again began to solicit new business, and up to March, 1904, transacted at its principal branch office in Chicago all of the business usually transacted at the chief or national office of an insurance company.

In March, 1904, the complainant was incorporated under the laws of the State of Illinois, with its principal office and place of business in the National Life building, at 159 La Salle street, in the city of Chicago, and the complainant forthwith took over all the property and business of the Washington, District of Columbia, corporation, and continued thereafter to transact the business theretofore transacted by the latter corporation. Prior to this time (March, 1904) the Washington company had taken over the business of two other life insurance companies and one trust company, all of which had become merged in the Washington company when the complainant took over its business. The Washington corporation still preserves its corporate entity, but since March, 1904, has transacted no business except such as was incident to carrying out the contracts by which the complainant took over its property and business.

The average number of pieces of mail received by the complainant at its chief office in Chicago, intended for it, during

the year 1905 and up to May 1, 1906, was about 200 per day for each business day.

The defendant F. E. Coyne was the postmaster at Chicago up to the eighth of January, 1906, since the commencement of this suit, and on that date Fred A. Busse was appointed and has since acted as such postmaster. The other individual defendants are the mail carriers in that city for the territory in which the complainant's place of business is situated.

The corporation defendant was organized and incorporated by an act of the legislature of Vermont on the thirteenth day of November, 1848, under the name of "National Life Insurance Company of the United States." By another act of the legislature, approved October 7, 1858, the name of the company was changed to "National Life Insurance Company," and since that time its name has been continuously and is now "National Life Insurance Company."

The company was duly admitted to do business in the State of Illinois on the fifth of October, 1860, and has done business in that State continuously from that time to the present. It has maintained since some time prior to 1868 a branch office in the city of Chicago, and has done business continuously at that branch office since its establishment up to the present time. That office since March 1, 1895, has been in charge of the defendant D. G. Drake, as its manager. During the period from 1881 to 1900 the business of this corporation in the State of Illinois increased from 190 policies to 3,846 policies. It has in all more than 70,000 policyholders, and the average number of pieces of mail-matter received by it and D. G. Drake, its manager, at the office of the company in the Marquette Building, in Chicago, and intended for them, or one of them, during the year 1905 and up to May 1, 1906, was about 23 pieces per day for each business day.

There had been received for some years prior to 1905, at the Chicago post-office, numerous pieces of mail-matter every day, addressed simply "National Life Insurance Company, Chicago, Illinois." During the year 1905 the average number

of such pieces of mail-matter was about five per day. Prior to the nineteenth of January, 1905, substantially all such mail-matter thus addressed had been delivered to D. G. Drake, as manager for the defendant National Life Insurance Company, and from day to day Drake opened or caused to be opened the pieces of mail-matter thus addressed, and those not found to be intended for the defendant company would be marked by him "Not for National Life Insurance Company," would then be redeposited in the United States mail and subsequently delivered to the National Life Insurance Company of the United States of America.

. The complainant was dissatisfied with this condition of things and contended that all the mail thus addressed should be delivered to the complainant. Various letters passed upon the subject between the complainant and the postmaster at Chicago, and the manager of the defendant corporation, and also the authorities of the Post Office Department, at Washington. For the purpose of settling the question it was suggested from Washington that the postmaster at Chicago should direct a representative of the two companies to appear at his office daily for a period of ten days and open the mail in the presence of an employé of the office, designated by the postmaster, and that a record should be kept of the mail received, and the proportion thereof intended for each company. If it then appeared that a great majority of the mail was really intended for the complainant, delivery should be made to that company. On the other hand, if the contention that the greater part of the mail so addressed belonged to the complainant was not supported by the facts, the existing conditions should be continued; and should either party decline to assent to these conditions, delivery should then be made to the other. The defendant corporation did not agree to this examination of the mail, and asked (January 17) for delay for further communications, but the postmaster at Chicago, on account of this refusal, and also acting under advices from the Postmaster General's Department, at Washington, directed, under date

of January 18, 1905, that thereafter the mail should, until otherwise directed, be delivered to the complainant. Under this order the mail was so delivered from January 19, 1905, until July 12, 1905. During that time the complainant received 794 letters addressed "National Life Insurance Company, Chicago, Illinois," and of that number 778 were found to be intended for the complainant and related to its business; 2 letters were intended for the defendant and related to its business; and the remaining 14 pieces consisted of circular letters relating to bonds, mortgages and other securities and investments, advertising, catalogues and statistics, in regard to which it was impossible to tell from the inspection of the envelope and contents whether they were intended for the complainant or the defendant.

On the twenty-first of June, 1905, the Post Office Department altered its directions, and directed the Chicago postmaster to thereafter deliver mail addressed "National Life Insurance Company, Chicago, Illinois," to the National Life Insurance Company, a Vermont corporation, at its offices in the Marquette Building, Chicago, Illinois.

This order has ever since been obeyed by the Chicago postmaster, and for the purpose of obtaining relief therefrom the present suit was commenced.

*Mr. L. A. Stebbins*, with whom *Mr. W. H. Sears* was on the brief, for appellant.

*Mr. Henry Russell Platt* for appellee National Life Insurance Company.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The record shows that the defendant company was first incorporated in Vermont in 1848 by act of the legislature, under the name "National Life Insurance Company of the United

States," but in 1858 the legislature of that State altered the name to "National Life Insurance Company," and this was ten years prior to the incorporation of the Washington, D. C., corporation. The defendant company has ever since that time maintained the name given it in 1858, and it was in use by it when, in 1860, it was admitted to do business in Illinois. It established a business office in Chicago prior to 1868, and has since that time continuously made use of the mails of the United States, under its corporate name.

After the Washington company was incorporated in August, 1868, it was admitted to do business in the State of Illinois, but it was not until 1874 that it established in the city of Chicago what it denominated its principal branch office.

The defendant company, under the law of Illinois, places on its signs in the building where it does business a statement that it was incorporated in Vermont, but its corporate name has no such addition.

Both companies being engaged in the life insurance business in various States, and, after 1874, both having business offices in Chicago, are constantly receiving letters through the mails. Large numbers of them are properly addressed, those intended for the complainant being addressed to it by its own name, to which is usually added the street number of the building in which it has its office, 159 La Salle street, while those intended for the defendant company are addressed to it by name, with the addition of Marquette Building, where its office is, or they are addressed to D. G. Drake, its manager. The difficulty has arisen over letters which were simply addressed "National Life Insurance Company, Chicago, Illinois," and these have, with the exception of a brief time between January and July, 1905, been delivered to the defendant company, in the Marquette Building. After they have been there opened such of them as have been intended for the complainant have been returned to the post-office at Chicago, from which they have been then delivered to the complainant. A very large proportion of the letters thus addressed have proved, upon

being opened, to have been intended for the complainant. The letters that are addressed to the defendant by its corporate name cannot be known to have been intended for the complainant until they have been opened. In other words, there is nothing on the outside of the letters from which it could be determined that they were not intended for the company to which they were addressed by its corporate name, but for the complainant. Some of the letters thus addressed have been, in fact, intended for the defendant company, although a very small proportion of them.

As the defendant company used its name long prior to the adoption of a somewhat similar name by the complainant, it is apparent that the confusion which has arisen therefrom in regard to the mail delivered at Chicago is not at all the fault of the defendant company. The whole claim of the complainant rests upon the averment that a very large majority of the letters that are addressed to the defendant company by its own name alone are in reality intended for the complainant. This fact does not clothe the complainant with the legal right to insist that the Chicago postmaster shall be directed to deliver all mail of the character in question to a corporation other than that to which the mail is addressed. It is a matter of confusion arising from a similarity of names, wherein the greater proportion of the total amount of the mail thus addressed belongs to the complainant, although not addressed to it, and yet some portion of the mail thus addressed actually belongs to the company to which the mail is in fact addressed. There are no means of discovering to which company the letters belong short of opening them. The complainant by adopting greater caution in the matter of directions to its correspondents as to the proper address might probably be able to secure more correctness in the direction of letters intended for it.

In the endeavor to discharge its duty the department has provided, in paragraph 4 of § 645 of its Postal Laws and Regulations of 1902, the following general regulation:

"Attempts to secure the mail of an established house, firm, or corporation through the adoption of a similar name should not be recognized. Where disputes arise between individuals, firms, or corporations as to the use of a name or designation, matter addressed to a street, number, or building should be delivered according to such address. When not so addressed, *the mail will be delivered to the firm or corporation which first adopted the name of the address at that place.*"

The Post Office Department made a special order herein, following substantially that rule. The appeal made by the complainant to the department was really nothing but an appeal to its discretion; complainant could only have asked for the order because, upon the whole, it was thought but fair and equitable that the corporation for which, in a great majority of cases, the letters were probably intended, should have them, although letters so addressed were in a number of cases intended for the corporation named on them. The court is now asked, in effect, to review and reverse that order, not because the complainant has a legal right to the delivery of all these letters, but only because, judging from the past, the numbers intended for complainant are many more than those intended for defendant, even though all are addressed to the latter. The court is therefore asked to judge by the experience of the past, although in making the order asked for it inevitably directs the delivery of some letters to the wrong party, and in opposition to the address upon the letters. Assuming that the court in some cases has the power to, in effect, review the determination of the department, we do not think this is an occasion for its exercise. The complainant is really appealing from the discretion of the department to the discretion of the court, and the complainant has no clear legal right to obtain the order sought. See *Bates & Guild Co.* v. *Payne,* 194 U. S. 106, 108.

A court in such case ought not to interfere in the administration of a great department like that of the Post Office by an injunction, which directs the department how to conduct

the business thereof, where the party asking for the injunction has no clear right to it.

This case has nothing in common with *American School &c.* v. *McAnnulty*, 187 U. S. 94. There the Post Office Department was assuming to act under a statute giving it the power to refuse to deliver mail-matter to an individual guilty of fraud in his business, and this court held that the case made did not show that the plaintiff in error had been guilty of any conduct that could be held to be a fraud under the statute under which the Post Office Department was acting. The department was, therefore, without jurisdiction to make the order, which was reversed in this court.

The judgment of the Circuit Court of Appeals must be

*Affirmed.*