PLESTED *v.* ABBEY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF COLORADO.

No. 156.   Argued January 21, 1913.—Decided April 7, 1913.

Subordinate officers of the Land Department are under the control, and their acts are subject to the review, of their official superiors—the Commissioner of the General Land Office and ultimately the Secretary of the Interior.

Until the legal title to public land passes from the Government, inquiry as to all equitable rights comes within the cognizance of the Land Department. *Brown* v. *Hitchcock*, 173 U. S. 433, 476.

Congress has placed the Land Department under the supervision and control of the Secretary of the Interior, a special tribunal with

large administrative and *quasi*-judicial functions, and subordinate officials should not be called upon to put the court in possession of their views and defend their instructions from the Commissioner and convert the contest before the Land Department into one before the court. *Litchfield* v. *Register,* 9 Wall. 575.

THE facts, which involve the right under the laws of the United States to purchase coal lands belonging to the United States, and the jurisdiction of the courts over the officers of the Land Department prior to issuing of the patent, are stated in the opinion.

*Mr. Jesse G. Northcutt* and *Mr. William C. Prentiss,* with whom *Mr. Robert H. Widdicombe* and *Mr. A. Watson McHendrie* were on the brief, for appellants:

The rights of the appellants, as well as the duty of the appellees, are to be found in § 2347, Rev. Stat., fixing twenty dollars per acre.

That statute is not ambiguous. Its language admits of but one interpretation. If the receiver or register, or both, demand more than twenty dollars they are prohibiting the exercise of the right which Congress has conferred and therefore acting beyond and contrary to the law. Being outside of the pale of the law they are not entitled to its protection; even though the rule exists that they shall not be interfered with by the courts when exercising their official functions within the law.

The rule that so long as the title of the land remains in the Government the officers of the Land Department will not be interfered with in the discharge of their official duties, unless those duties are of a character purely ministerial and involving no exercise of judgment or discretion (*Litchfield* v. *Richards,* 9 Wall. 575) has as the converse of this proposition that if the duty involved is purely ministerial, not involving the exercise of discretion, the courts on proper application will interfere for the protection of individual rights.

The courts have interfered to prevent the infliction of injury by other Federal executive officers. Why the sacred immunity of officers of the Land Department?

The question herein involved calls for no distinction between discretionary and ministerial duties. Appellants do not seek to restrain the discharge of a duty, or to enforce the discharge of a duty, but simply to restrain the defendants from doing an unlawful and wrongful thing, which if permitted to be done inflicts a wrong and injury upon the complainants here, for which they have no plain or adequate remedy, if, in fact, they have any remedy at all, except the interference of a court of equity by its preventive mandate.

The question is not whether the act is discretionary or ministerial, but whether it is lawful or unlawful. Courts of equity will restrain the officers from exercising their duties beyond the pale of the law just as they do private individuals. 2 Story's Equity, § 955 (12th ed.); 3 Pomeroy, § 4340 (3d ed.); *Noble* v. *Union R. L. & R. Co.*, 147 U. S. 165; *Board of Liquidation &c.* v. *McComb*, 92 U. S. 531, 541; *LaChapalle* v. *Buffs Indian Agt.*, 69 Fed. Rep. 481; *American School* v. *McAnnulty*, 187 U. S. 94; *New Orleans Natl. Bank* v. *Merchant*, 18 Fed. Rep. 851; *Teal* v. *Felton*, 12 How. 284; *Rector* v. *Gibbon*, 111 U. S. 276.

If the order of the Department under which the defendants here claim to act is not clearly within the power granted to the Interior Department, it is not law and has no binding force or effect. *United States* v. *United Verde Copper Co.*, 196 U. S. 207; *Ballinger* v. *Frost*, 216 U. S. 240.

As to whether the act is discretionary or ministerial, see *Roberts* v. *United States*, 176 U. S. 221.

The Department can exercise only such power in making regulations as is conferred upon it by statute. § 161, Rev. Stat.

As to specific authority to make regulations concern-

ing coal lands, see §§ 2347, 2351, Rev. Stat. Even if Congress in enacting § 2347, fixing the price at not less than $20.00 per acre, intended to reserve the right to charge more, it has nowhere vested in the Interior or any other executive department the power to fix a greater or any other price. Such power could not be exercised without an express delegation thereof. And see as to intent of Congress in this respect, *United States* v. *The Trinidad Coal & Coke Co.*, 137 U. S. 160, construing the acts of July 1, 1864, and March 3, 1873. See also departmental regulation of July 31, 1882, and 1 L. D. 689, par. 12, fixing the price at $10–$20, depending upon distance from railways.

This has been universally the construction of the Department as shown by the following cases: *In re Foster*, 2 L. D. 730–733; *Re. Colton*, 10 L. D. 422; *Re Conant*, 29 L. D. 637; *Secretary's Instructions*, 1 L. D. 540; *Re Largent*, 13 L. D. 396; *Re Burgess*, 24 L. D. 11.

The construction placed upon a statute by an executive department and followed for a term of years is entitled to great weight, as repeatedly held by this court. *United States* v. *Finnell*, 185 U. S. 236.

The construction thus placed upon the statute will be respected by the courts unless obnoxious to the plain provisions of the statute, and if doubtful will not be overruled except for cogent reason. *Edwards* v. *Darby*, 12 Wh. 206; *United States* v. *Fillbrick*, 120 U. S. 52; *United States* v. *Alabama G. S. R.*, 142 U. S. 615.

The Executive had no right to withdraw these lands from entry. *United States* v. *Fitzgerald*, 15 Pet. 421; *United States* v. *Tichenor*, 12 Fed. Rep. 423.

Where parties have lawfully tendered their money to the Department and the tender is wrongfully rejected, the rights of the applicants are the same as though the money had been accepted. *Ballinger* v. *Frost, supra.*

The withdrawal under the authorities above cited

was inoperative to reserve the lands from entry.  *Osborne v. Froyseth*, 216 U. S. 571.

None of the constitutional powers vested in the President include a delegation to him of control over the public lands. If, then, he has any power over the public lands, it must be found in the acts of Congress. *Northern Pac. R. R. Co.* v. *Davis*, 19 L. D. 87; *Titamore* v. *So. Pac. R. Co.*, 19 L. D. 249; Instructions, 33 L. D. 104; *Fort Boise Hay Reservation*, 6 L. D. 16; *United States* v. *Blendaner*, 122 Fed. Rep. 703; *Hewitt* v. *Schultez*, 180 U. S. 139; *So. Pac.* v. *Bell*, 183 U. S. 675.

The state courts had no jurisdiction of the subject-matter; they are without power to issue process against a Federal officer where, as here, the subject of the suit is inquiry into the legality of acts done by him in the transaction of strictly Federal Government business. *McClung* v. *Silliman*, 6 Wheat. 598; *Slocum* v. *Maybery*, 2 Wheat. 1; *Re Ferguson*, 9 Johns. 239; *Hill* v. *Confederate States*, 38 Alabama, 461.

As the state courts have no jurisdiction in this case, the Federal court, sitting as such, has exclusive jurisdiction. *Globe Newspaper Co.* v. *Walker*, 210 U. S. 356; *The Ira M. Hedges*, 218 U. S. 264.

*Mr. Assistant Attorney General Cobb*, with whom *Mr. Solicitor General Bullitt* was on the brief, for appellees:

It appears on the face of the bill that the title to the land sought to be acquired is in the United States, and that the proceedings to acquire that title are still *in fieri*, in the only forum, i. e., the Land Department, appointed by law to adjudicate such matters, involving, as they do, the exercise of judgment and discretion; and that the courts are, therefore, without jurisdiction to interfere in equity or at law, by review or otherwise, with the exercise of that judgment and discretion. *Brown* v. *Hitchcock*, 173 U. S. 433, 476, 478; *Knight* v. *Land Association*, 142

U. S. 161; *Litchfield* v. *Register and Receiver*, 9 Wall. 575; *Naganab* v. *Hitchcock*, 202 U. S. 473; *Oregon* v. *Hitchcock*, 202 U. S. 60; *Roberts* v. *United States*, 176 U. S. 221; *Ness* v. *Fisher*, 223 U. S. 683; *Riverside Oil Co.* v. *Hitchcock*, 190 U. S. 316; *United States* v. *Schurz*, 102 U. S. 373, 396.

Were it otherwise, that is, if the local officers, the defendants in this suit, owe merely a plain ministerial duty which they are neglecting to perform, the remedy is at law, in mandamus and not in equity.

It further appears, on the face of the bill, that complainants, if they were wronged by the action of the register and receiver (the defendants), have not exhausted their remedy by resort to the process authorized by law and accorded by the regulations of the Land Department.

The action of the local land officers in requiring the payment of the price fixed by the Land Department was in accordance with the law. *Binns* v. *United States*, 194 U. S. 486, 495; *Commonwealth* v. *Brown*, 210 Pa. St. 29; *Drake* v. *The State*, 5 Tex. App. 649; *Hankins* v. *The People*, 106 Illinois, 628, 634; *Maxwell* v. *Dow*, 176 U. S. 581, 601; *Rusch* v. *The City of Davenport*, 6 Iowa, 443, 454; *Stewart* v. *Griswold*, 134 Massachusetts, 391; *Stewart* v. *Lehigh Valley R. R. Co.*, 38 N. J. Law, 505, 517; *Stimson* v. *Pond*, 23 Fed. Cas. No. 13455; *United States* v. *Freight Association*, 166 U. S. 290; *United States* v. *Trinidad Coal and Coking Co.*, 137 U. S. 160; *Worth* v. *Peck*, 7 Pa. St. 268.

The question of the validity of the reservation or withdrawal is not in this case. That question was litigated by complainants before the Land Department, decided against them, and abandoned. This suit is based upon a second—an independent—application of complainants to enter the land based upon the appraised price.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The appellants prosecute this direct appeal from a decree

sustaining a demurrer to a bill by them filed and dismissing
the cause for want of jurisdiction. The suit concerned
the right of the complainants under the laws of the United
States to purchase certain coal lands belonging to the
United States, and the defendants were the local land
officers of the United States at Pueblo, Colorado.

The theory that the decree dismissing the bill is sus-
ceptible of being directly reviewed rests upon the assump-
tion that the controversy, because of its nature and be-
cause of the official character of the defendants, was one
of exclusive Federal cognizance, and therefore the refusal
to exercise jurisdiction necessarily involved a ruling con-
cerning the authority of the court below as a Federal
court.

To decide the issue it is essential to consider the aver-
ments of the bill and the reasons which led the court below
to sustain the demurrer. The bill alleged that in the spring
of 1897 the complainants took possession of and com-
menced the improvement of two hundred and forty acres
of coal land, the property of the United States, situated
within fifteen miles of a completed railroad, in Las Animas
County, Colorado. In due time, it was averred, they filed
in the local land office at Pueblo the declaratory statement
authorized by § 2349, Revised Statutes, and on July 1,
1907, tendered twenty dollars per acre for the land and
applied to enter the same under § 2350, Revised Statutes.
It was alleged that on January 11, 1908, both the declar-
atory statement and the application were rejected by the
local land office upon the ground that the land had been
withdrawn from sale under the coal land laws by a depart-
mental order dated July 26, 1906, and that on appeal the
Commissioner of the General Land Office affirmed the
action of the local officials, and on a further appeal such
decision was approved on January 30, 1909, by the Secre-
tary of the Interior.

The following facts were then averred:

In June, 1910, the land in question, with other land, was restored to entry, and on June 28, 1910, the register notified the complainants in writing that they would be allowed sixty days from the receipt of the communication in which to make a formal claim to the land as to which they had previously filed a notice of claim, and that the price fixed by the United States Geological Survey for certain of the land was one hundred and twenty-five dollars per acre and for the remainder one hundred and fifteen dollars per acre, aggregating thirty thousand dollars for the entire tract. It was alleged that soon afterwards the complainants filed in the local land office a written application for the purchase of the land and by direction of the register a notice of the application was published and copies thereof were posted as required by statute, and due proof of the performance of such acts was filed in the land office. In September following, in response to communications from the complainants, the local land office notified complainants that payment for the land must be made within thirty days or the application to purchase would be rejected. Within the time fixed a tender of forty-eight hundred dollars was made to the receiver, as being the price fixed by § 2347, Revised Statutes. The receiver refused to accept the money or to give any receipt therefor. The bill then averred that it was the intention of the land officers to refuse to permit the complainants to purchase the land unless they were willing to pay, not the alleged statutory price, but the sum of thirty thousand dollars, arbitrarily fixed by the Secretary of the Interior as the price of the lands. The prayer of the bill was for both a restraining and a mandatory injunction, the one forbidding the defendant land officers from carrying out the orders of the Secretary of the Interior and the Commissioner of the General Land Office and the other commanding the defendant land officers to accept the application of the complainants and allow them

to purchase the lands upon the payment of the sum of $20 per acre. It was, moreover, prayed that defendants be restrained from receiving or accepting the application of any other person for the entry of the lands.

As at the outset stated, a demurrer was sustained and the cause was dismissed for want of jurisdiction, the court in its certificate stating that this was done "upon the ground that a ruling or decision by the officers of a local land office of the United States made in the usual course of proceedings for the acquisition of the title to public lands is not subject to review or correction in the courts while the title to the lands remains in the United States, and also upon the further ground that while the title to public lands remains in the United States and the proceedings for acquiring that title are still *in fieri*, the courts are without power, by injunction or otherwise, to control the judgment and discretion of the officers of the land department in respect of the disposal of such lands under the public land laws."

In testing the correctness of the ruling we treat as negligible the averments of the bill assailing the validity of the rejection on January 30, 1909, of the application then pending to enter the land. We do this because if complainants had a remedy in the courts growing out of such rejection it was their duty to invoke and pursue that remedy, and not having done so, but on the contrary having for more than a year and a half acquiesced in the judgment of the Land Department and having made subsequently an entirely new application, we think their rights must be measured by the later application. Considering the issue in that respect, we are of opinion that the principle which caused the Circuit Court to hold that it had no jurisdiction to award the relief prayed and hence to dismiss the bill was a correct one. The United States had not parted with the legal title to the land. The defendants were subordinate officials of the Land

Department, and the acts and omissions complained of were done pursuant to instructions from the head of the Land Department, vested by law with the power to control the conduct of his subordinates in matters of this character.

As officers administering the land laws, the defendants therefore were, in the nature of things, under the control and their acts were subject to the review of their official superiors—the Commissioner of the General Land Office and ultimately of the Secretary of the Interior. As said in *Litchfield* v. *Register & Receiver*, 9 Wall. 575, 578, subordinate officials of the Land Department should not be called upon "to put the court in possession of their views and defend their instructions from the Commissioner and convert the contest before the Land Department into one before the court." Indeed the doctrine upon which the court below based its action has been frequently announced and enforced. It was thus epitomized in *Brown* v. *Hitchcock*, 173 U. S. 473, 476, that "until the legal title to public land passes from the Government, inquiry as to all equitable rights comes within the cognizance of the Land Department." In *United States* v. *Schurtz*, 102 U. S. 378, 396, the doctrine is thus stated:

"Congress has also enacted a system of laws by which rights to these lands may be acquired, and the title of the Government conveyed to the citizen. This Court has with a strong hand upheld the doctrine that so long as the legal title to these lands remained in the United States, and the proceedings for acquiring it were as yet *in fieri*, the courts would not interfere to control the exercise of the power thus vested in that tribunal. To that doctrine we still adhere."

See also *United States ex rel. Riverside Oil Co.* v. *Hitchcock*, 190 U. S. 316; *Knight* v. *Land Association*, 142 U. S. 161; *Oregon* v *Hitchcock*, 202 U. S. 60; *Naganab* v. *Hitchcock*, 202 U. S. 473; and the very recent decision in *United*

*States ex rel. Ness* v. *Fisher*, 223 U. S. 683. In the last named decision the *Litchfield Case* was cited with approval, and it was again reiterated that Congress has placed the Land Department under the supervision and control of the Secretary of the Interior, a special tribunal with large administrative and *quasi*-judicial functions, to be exerted for the purpose of the execution of the laws regulating the disposal of the public lands.

Without, therefore, expressing any opinion upon the merits, we hold that under the facts stated in the bill this resort to the courts was premature, and the judgment below must therefore be

*Affirmed.*