CYWAN v. BLAIR, Commissioner of Internal Revenue, et al.

(District Court, N. D. Illinois, E. D. November 8, 1926.)

No. 6151.

1. Injunction ⬳137(4)—That wisdom of granting preliminary injunction is doubtful is sufficient to warrant its denial.

The granting or withholding of a preliminary injunction vests in the sound discretion of the trial court, and where substantial doubt exists as to the wisdom of issuing an injunction, that fact alone suffices to withhold it.

2. Injunction ⬳132—Preliminary injunction is generally granted to preserve status quo.

Generally a preliminary injunction is granted to preserve the status quo.

3. Intoxicating liquors ⬳108(10)—Effect of temporary injunction continuing permit in force after revocation is not to preserve, but to disturb, status quo (National Prohibition Act, tit. 2, § 9 [Comp. St. § 10138½dd]).

Under the provision of National Prohibition Act, tit. 2, § 9 (Comp. St. § 10138½dd), that pending suit for review of a decision revoking a permit, such permit shall be temporarily revoked, the effect of a temporary injunction continuing the permit in force is not to preserve, but to disturb, the status quo, and it should not be granted where the sworn answer overcomes the equities alleged in the bill.

4. Intoxicating liquors ⬳102—Permittee held to have waived right to insist on terms of permit, by application for renewal.

After promulgation of Treasury Decision No. 3773, providing that all basic permits for using denatured alcohol should expire on December 31, 1925, an application by a permittee for renewal of his permit, made without reservations, and proceedings thereon, in which he participated, constituted an election

to proceed in harmony with, and not against, such Treasury Decision, and worked a surrender of the permit.

**5. Intoxicating liquors ⬅️102—Hearings on application of permittee for renewal of permit held in effect revocation proceedings.**

Four hearings on application of a permittee for renewal of his permit, in which he participated, and as a result of which his application was denied and his original permit revoked, *held* in effect revocation proceedings.

**6. Intoxicating liquors ⬅️106(1)—Treasury Decision limiting term of permits held not clearly beyond power of department.**

Treasury Decision No. 3773, providing that all permits should expire on December 31, 1925, is not clearly not a reasonable regulation within the power of the department, though by the terms of permits affected they were to be in effect until surrendered or canceled.

**7. Intoxicating liquors ⬅️106(1)—Basic permit to use denatured alcohol held to expire under statute on December 31st, after issuance (National Prohibition Act, tit. 2, § 6 [Comp. St. 10138½c]).**

The provision of National Prohibtion Act, tit. 2, § 6 (Comp. St. § 10138½c), that permits shall expire on December 31st after their issuance, *held* to apply to a basic permit to use denatured alcohol for a manufacturing purpose.

In Equity. Suit by Abraham B. Cywan against David H. Blair, Commissioner of Internal Revenue, and another. On motion for temporary injunction. Denied.

Wm. F. Waugh, of Chicago, Ill., for plaintiff.

Edwin A. Olson and Walter E. Wiles, both of Chicago, Ill., for defendants.

WILKERSON, District Judge. This is an application for a temporary injunction, submitted on verified bill and verified answer. The complainant is a manufacturer of toilet water, hair tonics, and bay rum, of all of which alcohol is a necessary ingredient. The complainant held a permit issued by the government to use for that purpose specially denatured alcohol in certain amounts and for specified periods. In those periods the complainant would obtain the alcohol by withdrawal permits. The permit provided that it should be in effect until surrendered by the holder or canceled by the Commissioner of Internal Revenue for violation of the provisions of title 3 of the National Prohibition Act (Comp. St. §§ 10138¾–10138¾t), or the regulations made pursuant thereto.

On November 14, 1925, the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, promulgated a regulation known as Treasury Decision No. 3773, providing: "All basic permits issued under titles II and III of the National Prohibition Act shall expire on December 31, 1925. * * * All regulations inconsistent herewith are hereby rescinded to the extent of such inconsistency."

In December, 1925, complainant was informed by the Prohibition Department that under said Treasury Decision it had become necessary for all permittees to renew their permits each year. Thereupon complainant, on December 17, 1925, applied for renewal of his said permit, but on March 9, 1926, the department informed him that his application for renewal had been disapproved.

The bill alleges, but the sworn answer denies, that no hearing was ever had to revoke said permit, and that the application for renewal was filed without surrendering or intending to surrender the said permit. However, the application for renewal was made without any express reservation of any kind. The sworn answer further avers that the notice of March 9, 1926, from the prohibition administrator, set forth the reasons why the application for renewal was denied.

On March 18, 1926, complainant wrote a letter to the prohibition administrator, protesting the action of the administrator's office on the application for renewal of the permit and requested a hearing. The request was granted on March 29, 1926, and hearing was had. In this connection the sworn answer avers that on or about March 22, 1926, the complainant was accorded an informal hearing in the prohibition administrator's office, at which time and place complainant was informed by the Prohibition Department that he could have a hearing if he desired, and that on that date complainant requested a hearing, and a full and complete hearing was had on March 29, 1926, at which complainant appeared in person and by counsel, participating therein fully, and without exception or reservation either to the jurisdiction of the presiding officer or the regularity of the hearing, and a copy of the transcript of the proceeding is attached to and made part of the answer. On April 5, 1926, the presiding officer at the hearing rendered an opinion sustaining the disapproval of the application for renewal, which opinion was approved by the prohibition administrator, "whereupon" the Prohibition Department canceled the complainant's permit and refused to permit him to withdraw alcohol in accordance with its provisions.

The answer also avers that, after the find-

ing made as a result of the said hearing, the complainant requested a review of the record of the hearing, and a rehearing was accorded to the complainant on April 20, 1926, at which complainant again appeared in person and by counsel and was permitted to present arguments and further testimony. A copy of the transcript of that proceeding is also attached to the sworn answer and made a part thereof.

The bill avers that the permit provided that it should be in effect until surrendered or canceled by the Commissioner for the causes mentioned in the permit, and that complainant has not voluntarily surrendered it, that it has not been revoked for cause pursuant to a "citation" in accordance with sections 5 and 9 of title 2 of the National Prohibition Act (Comp. St. §§ 10138½bb, 10138½dd), and that his business has at all times been conducted lawfully. The bill also avers that on June 15, 1926, he filed another petition to withdraw specially denatured alcohol under said permit, unless a citation issue immediately and the permit revoked for cause, but that the prohibition administrator refused to permit complainant to withdraw the alcohol or to issue the citation; that no citation was ever issued against complainant to show cause why his permit should not be revoked and that the permit was not revoked for cause but was arbitrarily and unlawfully canceled.

On the other hand, the sworn answer, after admitting the provisions of the permit and setting forth the contention that the Commissioner of Internal Revenue is authorized to make regulations governing the issuance, duration, and contents of such permits, and that Treasury Decision 3773 was a regulation amending all permits of that class by superseding and revoking the provisions of the aforesaid permit, goes further and denies that the permit has not been revoked for cause in accordance with the law and regulations, denies that the permit was arbitrarily and unlawfully canceled, denies the allegation that complainant has conducted his business lawfully, and refers to the copy of the transcript of the hearing held on March 29, 1926. The answer admits the filing of the petition of June 15, 1926, demanding the issuance of a citation and the revocation of the permit for cause, and avers that a hearing was given to complainant "pursuant thereto," and that the prohibition administrator denied the petition.

On the sworn bill and sworn answer the following questions arise: (1) Whether the complainant made an election to comply with Treasury Decision 3773 when he applied for a renewal of his permit, and thereby surrendered his permit and waived all rights thereunder. (2) Whether the four hearings before the Prohibition Department had the effect of revocation proceedings as a result of which the permit was expressly revoked. (3) Whether the said Treasury Decision was the exercise by the Commissioner of a reserved power to regulate, of which he could not be divested, and of which he was accordingly not deprived by the provisions in the permit here under consideration. (4) Whether the permit, under the law and the facts as herein set forth, terminated on December 31, 1925.

[1-3] In disposing of these questions the following general considerations must be borne in mind: The granting or withholding of the injunction rests in the sound discretion of the trial court. Meccano, Ltd., v. Wanamaker, 253 U. S. 136, 141, 40 S. Ct. 463, 64 L. Ed. 822. Generally the object of a preliminary injunction is to preserve the status quo. The granting of an injunction in this case would disturb the status quo. This is not only the general law but also the express language of section 9 of title 2 of the National Prohibition Act, that during the pendency of a court review of an order of the Prohibition Department "such permit shall be temporarily revoked." This is particularly so where the sworn answer overcomes the equities alleged in the bill. Woodside v. Tonopah & G. R. Co. et al. (C. C.) 184 F. 358, 360. Where substantial doubt exists as to the wisdom of the issuance of an injunction, that fact alone suffices to withhold it. Curtis Publishing Co. v. Federal Trade Comm. (C. C. A.) 270 F. 881, 914.

[4] 1. As to the first question above suggested, it is the court's opinion that when the complainant, acting in accordance with the Treasury Decision, applied for a renewal of his permit, he waived any rights which he may have had under it. The application for renewal, made without any reservation, and the subsequent proceedings had before the Prohibition Department, constituted an election to proceed in harmony with, and not contrary to, the Treasury Decision, and worked a surrender of the permit. See Plested v. Abbey, 228 U. S. 42, 50, 33 S. Ct. 503, 57 L. Ed. 724.

[5] 2. It is also the opinion of the court that the four hearings before the Prohibition Department were in effect revocation proceedings, in which the complainant was fully in-

formed of the complaints against him, and in which he appeared without reservation, in person and by counsel, and introduced evidence and made arguments in answer to the complaints.

3. The answer to the third question is not free from doubt. While the permit refers to title 3 of the National Prohibition Act, and while authority for its issuance may be found in section 13 of title 3 (Comp. St. § 10138¾l), authority for its issuance may also be found in section 4 of title 2 (Comp. St. § 10138½b). In fact, in one of the cases cited on the argument it is said that the two titles overlap in this particular. This may be due to the fact that title 3 was made effective before the Eighteenth Amendment, while title 2 did not become effective until after the amendment became effective. See section 21, tit. 3 (Comp. St. § 10138¾t). Title 3 was therefore not dependent on the amendment, but was passed either as a war measure, as was title 1 (Comp. St. §§ 10138¼a–10138¼g), or under the revenue power. Until the effective date of the Eighteenth Amendment, therefore, title 2 not being in effect, it might be argued that, at least up to that time, none of the sections of title 2 relating to the issuance or revocation of permits had any application to permits issued under title 3, and that therefore the power to appoint and permit included the corresponding power to discharge and. revoke, without following the procedure of title 2. There being no vested rights in the privilege to manufacture or deal in alcoholic liquors (Crowley v. Christensen, 137 U. S. 86, 91, 11 S. Ct. 13, 34 L. Ed. 620), and no requirement of a hearing before revocation being made in title 3, it might be held that the permit could be revoked without the hearing provided in title 2. In view, however, of the decision of the Supreme Court in Ma-King v. Blair (decided June 1, 1926) 46 S. Ct. 544, 70 L. Ed. 1046, applying the various sections of title 2 in disposing of an application presumably under title 3, and in view of the fact that the answers to the other questions dispose of the application in the case at bar, it is unnecessary to decide the third question above suggested.

[6] While, as above noted, there may be some question as to whether a permit issued under title 3 may be revoked without following the procedure outlined in section 9, title 2, the further question presents itself as to whether regulations having the effect of changing or revoking in whole or in part a permit issued under either title 2 or title 3 can be upheld, even though no hearing under under section 9 of title 2 is provided for.

The power to regulate intrusted to the Commissioner is quasi legislative in character. As hereinbefore noted, a permit under the National Prohibition Act grants a privilege, and not a vested right. Section 9, however, prescribes the procedure to be followed in taking away a permit; but section 6, tit. 2 (Comp. St. § 10138½c), by fixing time limitations upon permits, gives to them, to a limited degree, the character of vested rights. The general law is that a vested right cannot be taken away by legislative edict, unless for a public purpose, and then only after just compensation has been made; but the law also recognizes that such rights may be modified, changed, or entirely destroyed without compensation and without judicial hearing, when the legislative action is a regulation under the police power.

Thus, before the effective date of the Eighteenth Amendment or the National Prohibition Act, liquor was property, the rights in which could not be modified or taken away except under the police power. Great quantities of liquor were, by legislative regulation under the police power, rendered entirely valueless by the Eighteenth Amendment and National Prohibition Act. All this was without trial or compensation, both of which would have been necessary if the amendment and the act were not police regulations: See Hamilton v. Kentucky Distillery Co., 251 U. S. 146, 157, 40 S. Ct. 106, 64 L. Ed. 194; National Prohibition Cases, 253 U. S. 350, 387, 40 S. Ct. 486, 64 L. Ed. 946. The Treasury Decision in the case at bar merely declares a rule and limitation which the statute itself declares. It would be difficult to hold that the Commissioner could not pass a general regulation having the effect of changing or modifying all permits in some manner or degree, without going through a revocation proceeding as to each permit, and this merely because the permits issued by him were by him declared to be limited only by the pleasure of the permittee or for positive violation of law in particular cases.

Perpetuities are not generally favored. The whole field of permit privileges, under not only the Prohibition Act, but all other acts, shows that the common practice is to limit permits for a definite period, renewable at the termination of each period. It is not clear and beyond doubt, as the complainant contends, that the Treasury Decision here involved is not a reasonable regulation.

[7] 4. The court is also of the opinion that,

under the law and the facts as herein set forth, the permit terminated on December 31, 1925. Section 6 of title 2 of the National Prohibition Act provides:

"All permits to manufacture, prescribe, sell, or transport *liquor,* may be issued for one year, and shall expire on the 31st day of December next succeeding the issuance thereof: * * * Provided further, that permits to purchase *liquor* for the purpose of manufacturing or selling as provided in this act shall not be in force to exceed ninety days from the date of issuance. A permit to purchase *liquor* for any other purpose shall not be in force to exceed thirty days. Permits to purchase *liquor* shall specify the quantity and kind to be purchased and the purpose for which it is to be used."

Said section 6 makes complete provision in the matter of the issuance of permits, to whom they shall be issued, their form, manner of making application for them, and also for review in equity of the Commissioner's decision in case of refusal to grant a permit. Does the presence of the word "liquor" in the portion of section 6 above quoted have the effect of excluding from the limitations therein mentioned the kind of permit here under consideration?

Section 1, tit. 2 (Comp. St. § 10138½) includes as "intoxicating liquor," in addition to alcohol, all liquids, "by whatever name called," containing one-half of 1 per centum or more of alcohol by volume, which are fit "for use" for beverage purposes. This would include liquids usable for beverage purposes, either mediately or immediately.

Section 4 of title 2 of the National Prohibition Act (Comp. St. § 10138½b) exempts from the provisions of the act certain articles "after" they have been "manufactured and prepared" for the market, "if" they correspond with the following descriptions and limitations, namely:

"(a) Denatured alcohol or denatured rum produced and *used* as provided by laws and regulations now or hereafter in force. * *

"(d) Toilet, medicinal, and antiseptic preparations and solutions that are unfit for use for beverage purposes."

Said section 4 continues:

"A person who manufactures any of the articles mentioned in this section may purchase and possess *liquor* for that purpose, but he shall secure permits to *manufacture* such articles *and* to *purchase* such *liquor,* give the bonds, keep the records, and make the reports specified in this act and as directed by the Commissioner. No such manufacturer shall sell, use, or dispose of any liquor otherwise than as an ingredient of the articles authorized to be manufactured therefrom. No more *alcohol* shall be used in the manufacture of any extract, syrup, or the articles named in paragraphs (b), (c), and (d) of this section which may be used for beverage purposes than the quantity necessary for extraction or solution of the elements contained therein and for the preservation of the article."

The section concludes with a paragraph denouncing the sale of the exempted articles for beverage purposes. Section 5, tit. 2 (Comp. St. § 10138½bb) provides for a rule on a manufacturer in certain cases to show cause why the article "should not be dealt with as an intoxicating liquor," and his permit revoked.

It is to be noted that the articles mentioned in section 4 remain subject to the act as intoxicating liquor until they are placed on the market, and even after that time, if there has not been a compliance with that section, and section 5 recognizes that fact. It is also to be noted that, wherever provision is made for the obtaining of a permit under sections 3, 4, and 6, tit. 2 (Comp. St. §§ 10138½aa, 10138½b, 10138½c), the word "liquor" is used in connection with "permit."

Section 9 provides procedure for revocation of permits and for review of revocation orders in chancery. The language of this section merely uses the word "permit," and does not use the word "liquor" in connection therewith.

Under the contentions made for complainant, he has the right to a permit under section 4, tit. 2, right to a review under section 6, tit. 2, in case of a refusal to grant a permit, and right to insist upon compliance with the provisions of section 9, tit. 2, as to the procedure to revoke a permit; but he is not subject to the other part of section 6, providing for expiration of permits by lapse of time because of the use therein of the word "liquor" in connection with the reference to permits.

Title 2 applies to all liquids containing alcohol. Alcohol is an intoxicating liquor under section 1, and the preparations mentioned in section 4, containing alcohol, are also regulated as intoxicating liquors. In fact, denatured alcohol is expressly, by said section, subject to the provisions of the act as intoxicating liquor, being exempted to a limited extent only under the conditions named in said section. The alcoholic ingredient of any of the articles mentioned in the six clauses specifying the exempted articles

is expressly referred to as "liquor" in said section, which prescribes that a permit must be had therefor. Said section also limits the amount of "alcohol" which may be used in the manufacture of any of said articles, including, of course, the articles manufactured by complainant. The section recognizes that said articles exempted, including complainant's articles may be used and sold for intoxicating beverage purposes.

Section 5, tit. 2, places the burden in a certain class of cases on the manufacturer to show cause why his product should not be "dealt with" as an "intoxicating liquor."

Section 6 treats of the whole matter of the issuance of permits, and it is difficult, especially in view of the rule of liberal construction laid down in section 3 of the act, to hold that the time limitations upon permits expressed in section 6 should be held not to include permits issued to manufacturers under section 4, merely because the word "liquor" is used in section 6 in referring to the permits which expire at the times in said section mentioned. In the case of United States v. Katz, et al., 46 S. Ct. 513, 70 L. Ed. —, decided May 24, 1926, the Supreme Court said:

"Of the 39 sections in title 2 of the act which deals with National Prohibition, more than half, including the 7 sections which precede section 10 [Comp. St. § 10138½e] contain provisions authorizing or regulating the manufacture, sale, transportation, or use of *intoxicating liquor* for nonbeverage purposes. These provisions, read together, clearly indicate a statutory plan or scheme to regulate the disposition of *alcoholic liquor* not prohibited by the Eighteenth Amendment, in such manner as to minimize the danger of its diversion from authorized or permitted uses to beverage purposes."

It would seem, therefore, that the time limitations contained in section 6 apply to the permit here involved, and that said Treasury Decision merely declared what was already the law. In Ma-King v. Blair, supra, the Supreme Court has repeated that:

"The dominant purpose of the act is to prevent the use of intoxicating liquor as a beverage, and all its provisions are to be liberally construed to that end."

I should add that I have not overlooked Higgins v. Foster (C. C. A.) 12 F.(2d) 646, and Rock v. Blair (D. C.) 13 F.(2d) 1004. They are by courts of another circuit, and I have not felt constrained to follow them.

Complainant has not established a clear right to injunctive relief, and the injunction will therefore be denied.