ICKES, as Secretary of the Interior v.
UNDERWOOD et al,

No. 8378.

United States Court of Appeals
District of Columbia.

Decided March 20, 1944.

Mr. Jacob N. Wasserman, Chief Counsel, General Land Office, Department of the Interior, of Washington, D. C., with whom Messrs. Warner W. Gardner, Solicitor, and Harry M. Edelstein, Assistant Solicitor, Department of the Interior, both of Washington, D. C., were on the brief, for appellant.

Mr. Russell Hardy, of Washington, D. C., for appellees.

Before MILLER and EDGERTON, Associate Justices, and DOBIE, Circuit Judge.*

MILLER, Associate Justice.

On November 11, 1933, Donald L. Underwood, for himself and six others—four of whom are, with him, appellees herein—located a placer claim upon an area of 130 acres, with four-fifths of a mile of water front, along the east bank of the Columbia River in the State of Washington, approximately one and one-half miles downstream from the site of the Grand Coulee Dam. The location was intended to cover a sand and gravel deposit which, it is contended, constituted a valuable mineral deposit. The land had been formerly patented for a stock-raising homestead and the Underwood location was made on the theory that the owner had only surface rights in the land. At the time the claim was located the Government was negotiating with the owner to purchase a part of the land, for use in connection with construction of the dam. Because of the considerations heretofore described, an investigation, by a special agent, was ordered to be made; a report, adverse to appellees, followed; and the Commissioner of the General Land Office initiated a special proceeding against appellees' claim upon the following grounds: "(1) That the claim was located for purposes other than mining. (2) That the claim was located for speculative purposes. (3) That the claimants have not performed the amount of discovery work required by

---

*Sitting by assignment of the Chief Justice of the United States, pursuant to the provisions of the Act of December 29, 1942, 28 U.S.C.A. §§ 17–20, 22, 23, entitled "An Act to amend the Judicial Code to authorize the Chief Justice of the United States to assign circuit judges to temporary duty in circuits other than their own."

law. (4) That mineral has not been found on the claim in sufficient quantities to constitute a valid discovery. (5) That the land is nonmineral in character." Appellees answered; hearings were held in May, 1935 and, thereafter, the case was considered by the various tribunals of the Department, until, finally, on July 14, 1940, a decision, adverse to appellees, was given by the Assistant Secretary, Oscar L. Chapman.

On July 29, 1940, appellees filed, in the District Court, their complaint in the present case. The court, on October 28, 1941, denied appellant's motion to dismiss. Appellant then answered; the court granted appellees' motion for summary judgment and thereafter entered its judgment. It ordered (1) that appellant and his agents, forthwith, set aside, dismiss, vacate and rescind all decisions, contests, adverse proceedings, orders and records cancelling or disallowing the claim of appellees; (2) that appellant, forthwith, prepare, execute, record and deliver to appellees "all such grants, deeds, patents, certificates or other documents which may be necessary and appropriate and required by law to evidence their right * * *"; (3) that appellant and his agents are prohibited from doing any acts to prevent appellees from, or interfering with them in, recovering or disposing of the sand and gravel on the land in dispute. On this appeal the following points are presented for our consideration: "1. The motion to dismiss should have been granted because the complaint, in the light of the exhibits attached to it, does not establish that the appellant's decision in the Departmental proceedings was either arbitrary or capricious. 2. The motion for summary judgment should not have been granted in favor of the appellees because the pleadings showed that, at least as to the allegations in paragraphs XVI and XVII of the complaint, there were issues of material fact. 3. The court erred in refusing to consider the record in the Departmental proceedings, either by judicial notice or by granting the motion for rehearing, and in not granting judgment for appellant. 4. The judgment is erroneous because its provisions dismissing the Departmental proceedings and ordering the issuance of a patent oust the appellant of matters within his jurisdiction and the injunction against interfering with the removal of sand and gravel deprives the United States of its statutory rights under the act of December 29, 1916, *supra*."

██ The law applicable under the circumstances of this case has been frequently stated in terms contrary to the decision of the District Court. The general rule is that the judicial power will not be interposed to limit or direct the exercise of discretion by public executive officers with respect to pending matters within their jurisdiction and control,[1] except in clear cases of illegality of action.[2] The interference of the courts with the performance of the ordinary duties of the Executive Departments of the Government, would be productive of nothing but mischief; and such a power was never intended to be given to them.[3] It has long been a familiar practice for Congress to commit the execution of its policies to executive officers and agencies.[4] When it does so, the function of judicial review is fully performed when it is determined "that there has been a fair hearing, with notice and an oppor-

---

[1] Dakota Central Tel. Co. v. South Dakota ex rel. Payne, 250 U.S. 163, 184, 39 S.Ct. 507, 509, 63 L.Ed. 910, 4 A.L.R. 1623: "But as the contention at best concerns not a want of power, but a mere excess or abuse of discretion in exerting a power given, it is clear that it involves considerations which are beyond the reach of judicial power. This must be since, as this court has often pointed out, the judicial may not invade the legislative or executive departments so as to correct alleged mistakes or wrongs arising from asserted abuse of discretion." City of New Orleans v. Paine, 147 U.S. 261, 268, 13 S.Ct. 303, 37 L.Ed. 162; Proctor & Gamble Co. v. Coe, 68 App.D.C. 246, 96 F. 2d 518.

[2] Bates & Guild Co. v. Payne, 194 U. S. 106, 108, 109, 24 S.Ct. 595, 48 L.Ed.

894; Waite v. Macy, 246 U.S. 606, 608, 38 S.Ct. 395, 62 L.Ed. 892; United States ex rel. Riverside Oil Co. v. Hitchcock, 190 U.S. 316, 324, 325, 23 S.Ct. 698, 47 L.Ed. 1074.

[3] Decatur v. Paulding, 14 Pet. [U. S.] 497, 515, 10 L.Ed. 559; Perkins v. Lukens Steel Co., 310 U.S. 113, 131, 60 S. Ct. 869, 84 L.Ed. 1108; State of Louisiana v. McAdoo, 234 U.S. 627, 633, 34 S.Ct. 938, 58 L.Ed. 1506; National Life Ins. Co. v. National Life Ins. Co., 209 U.S. 317, 325, 28 S.Ct. 541, 52 L.Ed. 808; United States ex rel. Ness v. Fisher, 223 U.S. 683, 693, 694, 32 S.Ct. 356, 56 L.Ed. 610.

[4] Gray v. Powell, 314 U.S. 402, 412, 62 S.Ct. 326, 86 L.Ed. 301, and authorities there cited.

548

tunity to present the circumstances and arguments to the decisive body, and an application of the statute in a just and reasoned manner."[5] As to what constitutes a clear case of illegality of action this court has said: "The following tests have been used to uphold the exercise of judicial restraint upon executive action under valid laws: (1) Where an officer, insisting that he has the warrant of the statute, is transcending its bounds, and thus unlawfully assuming to exercise the power of government * * *; (2) where an officer attempts to enlarge his power, or to usurp power * * *; or (3) where his act is based upon a clear mistake of law * * *; (4) where the action of the officer or administrative body is clearly beyond its power and in violation of the statute * * *; (5) where an officer has acted, or threatens to act, in a capricious and arbitrary manner * * *; (6) where the act of the officer, 'under any view that could be taken of the facts that were laid before him, was ultra vires, and beyond the scope of his authority [and] he has no power at all to do the act complained of * * *.'"[6] The present case comes within none of these exceptions to the general rule.

In fact, this case falls into a category in which the rule has been long and strictly applied against those who would challenge or compel the exercise of executive discretion. In 1869, the Supreme Court said: "The principle has been so repeatedly decided in this court, that the judiciary cannot interfere either by mandamus or injunction with executive officers such as the respondents here, in the discharge of their official duties, unless those duties are of a character purely ministerial, and involving no exercise of judgment or discretion, that it would seem to be useless to repeat it here. In the case of Gaines v. Thompson [7 Wall. 347 [19 L.Ed. 62], decided at the last term of this court the whole subject was fully considered, and the cases in this court examined. The doctrine just stated was announced as the result of that examination. The case of The Secretary [of Interior] v. McGarrahan, of the present term [9 Wall. 298, 19 L.Ed. 579],

reaffirms the principle, which must now be considered as settled. *Both these cases had reference to efforts similar to the present, to control the officers of the land department.*"[7] (Italics supplied in part) In 1880, the same Court said: "Congress has also enacted a system of laws by which rights to these lands may be acquired, and the title of the government conveyed to the citizen. This court has with a strong hand upheld the doctrine that so long as the legal title to these lands remained in the United States, and the proceedings for acquiring it were as yet *in fieri,* the courts would not interfere to control the exercise of the power thus vested in that tribunal. To that doctrine we still adhere."[8] In 1912, Chief Justice White stated with approval the quoted language of the Schurz case and added: "Indeed the doctrine upon which the court below based its action has been frequently announced and enforced. It was thus epitomized in Brown v. Hitchcock, 173 U.S. 473, 476, 19 S.Ct. 485, 43 L.Ed. 772, that 'until the legal title to public land passes from the Government, inquiry as to all equitable rights comes within the cognizance of the Land Department.'"[9] The Government may dispense its bounty on such terms as it sees fit; and the executive agency which Congress has chosen for the purpose of giving away public lands and mineral deposits is peculiarly equipped, in terms of experience and administrative capacity, to act in its behalf. When an executive agency acts in this capacity, there is, perhaps, less reason than in any other type of administrative action to subject its determinations to judicial review.[10]

Appellees would bring themselves within the compass of public land cases, in which the applicants occupied contract relationships with the Government, such as the case of Payne v. Central Pacific Railway Company.[11] There the Railway Company had accepted an offer made by the Government; had constructed agreed units of railroad; had made required selection of indemnity lands, all in conformity with the statutory requirements. It was under those circumstances that the Supreme Court said:

[5] Gray v. Powell, 314 U.S. 402, 411, 62 S.Ct. 326, 332, 86 L.Ed. 301.

[6] Proctor & Gamble Co. v. Coe, 68 App. D.C. 246, 249, 250, 96 F.2d 518, 521, 522.

[7] Litchfield v. Register and Receiver, 9 Wall. [U. S.] 575, 577, 19 L.Ed. 681.

[8] United States v. Schurz, 102 U.S. 378, 396, 26 L.Ed. 167.

[9] Plested v. Abbey, 228 U.S. 42, 51, 33 S.Ct. 503, 504, 57 L.Ed. 724.

[10] McDermott, To What Extent Should the Decisions of Administrative Bodies be Reviewable by the Courts? 25 A.B.A. J. 453, 456.

[11] 255 U.S. 228, 41 S.Ct. 314, 65 L.Ed. 598.

"The railroad then had been constructed and equipped as required by the granting act *and nothing remained to be done by the grantee or its successor to fulfill the conditions of the grant and perfect the right to a patent.* The rule applicable in such a situation is that 'a person who complies with all the requisites necessary to entitle him to a patent for a particular lot or tract is to be regarded as the equitable owner thereof.' " [12] (Italics supplied) In that case the Court pointed out in express terms the fact which distinguishes it from the present case, i. e.: "Rightly speaking, the selection is not to be likened to the initial step of one who wishes to obtain the title to public land by future compliance with the law, but rather to the concluding step of one who by full compliance has earned the right to receive the title." [13] Here, appellees have merely taken the initial steps in seeking to secure a gratuity from the Government. They are in no position to compel action, or to coerce the executive in the exercise of its discretion.

The decision of the Secretary of the Interior, in the present case, turned upon his finding of fact that the deposits of sand and gravel in question were neither presently nor prospectively valuable for mineral use, before or at the time of the appropriation of the land for public use. His decision, and the finding upon which it is based, have abundant support in the record. Moreover, the decision was clearly within the scope of his authority; and in the absence of fraud or imposition is conclusive.[14] There was no showing of fraud or imposition in the present case; and the District Court was without authority to substitute its judgment for that of appellant.[15]

We have examined all contentions advanced by appellees, in support of the judgment, and find them to be without merit. Appellant's points on this appeal are well taken. The motion to dismiss should be granted.

Reversed.

[12] Payne v. Central Pacific Railway Co., 255 U.S. 228, 237, 41 S.Ct. 314, 316, 65 L.Ed. 598.

[13] Id., at pages 234, 235 of 255 U.S., at page 315 of 41 S.Ct., 65 L.Ed. 598.

[14] Cameron v. United States, 252 U.S. 450, 464, 40 S.Ct. 410, 64 L.Ed. 659.

[15] Gray v. Powell, 314 U.S. 402, 412, 62 S.Ct. 326, 86 L.Ed. 301; State of Louisiana v. McAdoo, 234 U.S. 627, 633, 34 S.Ct. 938, 58 L.Ed. 1506.