GREER v. CLINE, Inspection Sup'r.
No. 9952.

Circuit Court of Appeals, Sixth Circuit.
March 26, 1945.

Charles I. Dawson and Will H. Fulton, both of Louisville, Ky. (Chas. 1. Dawson, Will H. Fulton, Joe A. Wallace and Woodward, Dawson, Hobson & Fulton, all of Louisville, Ky., on the brief), for appellant.

Richard L. Garnett, of Glasgow, Ky. (Claude P. Stephens, U. S. Atty., and Ben L. Kessinger, Asst. U. S. Atty., both of Lexington, Ky., on the brief), for appellee.

Before HICKS, MARTIN, and McALLISTER, Circuit Judges.

MARTIN, Circuit Judge.

This litigation was originally instituted by the appellant, a tobacco warehouseman engaged in business at Horse Cave, Kentucky, in the Circuit Court of Fayette County, Kentucky, against the appellee, as Inspection Supervisor, Tobacco Branch, Office of Marketing Service, War Food Administration, United States Department of Agriculture. The state court entered a restraining order, enjoining the appellee from assigning additional inspectors to inspect, grade and certify for sale burley tobacco at the Glasgow, Kentucky, market. The cause was removed by appellee to the United States District Court for the Eastern District of Kentucky, which dissolved the temporary restraining order entered in the state court. Pending the appeal here from the interlocutory order of the district court, the temporary restraining order was reinstated by a member of this court.

It appears that the district judge had previously tried a similar case between the appellant and others and the appellee, involving the same subject matter. Wherefore, it was stipulated that the evidence introduced upon the trial of the former action could be considered as having been introduced and heard on the trial of the motions to dismiss and to dissolve the restraining order. In entering judgment, the district judge adopted his findings of fact and conclusions of law and the transcript of his oral opinion, delivered from the bench in the earlier action. The record in the instant matter contains the transcript of the oral opinion of the district judge, but does not contain his findings of fact and conclusions of law in the earlier case.

The controversy pertains to the Tobacco Inspection Act of August 23, 1935, 49 Stat. 731, 7 U.S.C.A. § 511, the administration of which was transferred to the War

Food Administration by the War Powers Act, 50 U.S.C.A., App. § 601.

The petition of appellant avers that, in conformity with the Tobacco Inspection Act, Horse Cave, Glasgow, and Bowling Green, all in the State of Kentucky, have been designated as burley tobacco auction markets; that his warehouse at Horse Cave is conducted under the supervision of those charged with the administration of the act; and that the appellee has been designated and is acting as inspection supervisor of the burley tobacco auction markets in Kentucky, his duty being to allot to the respective markets in that state inspectors for the inspection and certification of the grades of tobacco to be sold over the loose leaf tobacco floors of each of the designated burley tobacco auction markets.

Owing to its accessibility to producers, the burley tobacco auction market at Horse Cave, with practically the same housing facilities as are available at Glasgow, is averred to have greatly exceeded the market at Glasgow in sales over warehouse floors, with the result that more tobacco growers are habitually served by the warehouses at Horse Cave than at Glasgow. It is alleged that, under the federal rules and regulations, one set of inspectors is permitted to inspect and certify the grades of only 1080 baskets of tobacco a day, thus restricting daily sales over warehouse floors to that number of baskets.

Before the burley tobacco auction markets opened in Kentucky on December 11, 1944, one set of inspectors was assigned to the Horse Cave market and another to the Glasgow market. After this assignment was made, the appellant and other Horse Cave warehousemen learned that an additional set of inspectors was to be assigned to the Glasgow market. They protested, unless a like assignment was made to the Horse Cave market, asserting that the discrimination would be financially ruinous to them, inasmuch as, with an additional set of inspectors, twice as many baskets of tobacco could be sold each day at Glasgow as could be sold at Horse Cave. This would result in a hegira of tobacco growers from Horse Cave to Glasgow.

According to the petition, the appellee and his superiors admitted to appellant that such would be the result; conceded that the proposed action was wrong; but said that "politics had gotten into the matter and they had their orders and no other choice in the premises than to send [an] additional set of inspectors to Glasgow."

The appellant stated in his petition that he does not know whether discretion is vested in the appellee, or in some superior official, but that whoever determined to furnish Glasgow with an additional set of inspectors acted arbitrarily and capriciously, in violation of the spirit of the Tobacco Inspection Act and of the express provision of section 5, 7 U.S.C.A. § 511d; and that such action is wholly void. It was averred, moreover, that, regardless of who had the authority and promulgated the order assigning the extra set of inspectors to Glasgow, the duty of the appellee was to carry out the order, select the inspectors, send them to the Glasgow market and supervise the performance of their duties there. Asserting that he has invested thousands of dollars in his business and has spent large sums in building up good will and securing patronage for his warehouse, appellant charges that, if "the arbitrary, capricious and void order assigning a second set of inspectors to the Glasgow market without a like assignment to the Horse Cave market becomes effective," he will lose commissions and fees from numerous customers, who will abandon him for the Glasgow market; and that he will be immediately and irreparably damaged unless the appellee is enjoined from carrying out the order assigning additional inspectors to the Glasgow market.

The petition concludes with a prayer that the appellee "be enjoined from assigning said extra set of inspectors to the Glasgow market and from permitting them to begin functioning therein so long as he fails to assign a like additional set of inspectors to the Horse Cave market or to make such other arrangements as will permit the Horse Cave market to function on an equality with the Glasgow market, and that pending final determination of this case he be granted a temporary injunction enjoining and restraining the defendant [appellee] from directing, authorizing or permitting said additional set of inspectors to function at the Glasgow market, and that until a hearing can be had on his application for a temporary injunction he be granted a temporary restraining order so restraining and enjoining the defendant until further order of the court, and he prays for his costs herein expended and for all other general, equitable and proper relief."

As stated by the District Judge in his opinion denying the motion of appellant for a temporary injunction and dissolving the temporary restraining order, the authority of the Administrator of the Tobacco Inspection Act to appoint inspectors and other employees necessary to effectuate the purposes of the Act is expressly conferred by Section 14, 7 U.S.C.A. § 511m. There are no special requirements found in that section that an equal number of inspectors be assigned to each market. The opinion of the District Judge states that the appellant raises no question as to the existence of statutory power or authority in the Administrator to employ or allocate such inspectors to the various markets as he may deem necessary to effectuate the purposes of the Act; but that the complaint is based solely upon the alleged arbitrary manner in which the Administrator has executed his statutory power, and seeks to stay his hand by proceeding, not against him but against his subordinate only. The motion to dismiss was said to present a question as to whether the Administrator is an indispensable party to the proceeding.

Attempting to distinguish Jarvis v. Shackelton Inhaler Co., 6 Cir., 136 F.2d 116, and American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S. Ct. 33, 47 L.Ed. 90, the District Court, upon the authority of Neher v. Harwood, 9 Cir., 128 F.2d 846, and the cases there cited, accepted the rule to be that where a superior federal officer has acted within the authority conferred by a statute which is not attacked as unconstitutional or otherwise invalid, he is an indispensable party to an action to enjoin the execution of his orders, upon the ground that in some manner he has abused the discretion vested in him by the statute; and that an injunction suit may not be maintained solely against a subordinate who merely performed acts committed to him by the administrator's orders. The distinction was drawn that where the superior officer presumes to take action without statutory authority, or under an unconstitutional or otherwise invalid statute, his attempt to authorize action by a subordinate is of no validity, his orders are void, and the subordinate who undertakes to carry them out may be enjoined without joinder of the superior officer.

The District Judge declared: "The Jarvis case turned entirely upon the question of the existence of the superior officer's power, while this case, like the Neher case, involves merely the manner of the exercise of statutory power the existence of which is not challenged." We are not in accord with the District Judge's interpretation of the opinion of this court, promulgated in Jarvis v. Shackelton Inhaler Co., 136 F.2d 116, supra. No attempt was there made to harmonize the conflicting decisions, which was regarded as an almost, if not altogether, impossible task. Brooks v. Dewar, 313 U.S. 354, 61 S.Ct. 979, 85 L.Ed. 1399, was cited to that effect; and this court was content to decide the question presented by the record. But it was pointed out in the concluding paragraphs of the opinion that it would have been unjust and inequitable to dismiss the bill of complaint for no other or better reason than adherence to a formal and inapplicable rule of equity pleading. We indicated that the complainant should not, for non-joinder of the Postmaster General, be turned out of court and sent to Washington for a second contest over the same subject matter. The opinion writer said: "The dismissal of the bill would have been disastrous to appellee and the expense incident to new litigation hundreds of miles from home would have been equally crushing because its business, grossing only a few thousand dollars a year, would have been burdened with the extra expense of the new litigation. * * * Courts of equity have always struggled against technical rules which impede rather than contribute to substantial justice." 136 F.2d 122.

In Varney v. Warehime, 6 Cir., 147 F.2d 238, decided February 8, 1945, since the case at bar was submitted, the appellants asserted that the War Food Administrator was an indispensable party. Stating that the decisions on the question are conflicting, this court pointed out that a public official's constitutional or statutory power is usually a question of law, determinable in any appropriate forum without the personal presence of the superior officer; that the right of intervention is available to the superior official in any suit where his subordinate is a party defendant; and that citizens should not be compelled to seek a distant forum for litigation of their controversies with the Government and, likewise, public officials should not be compelled to neglect their duties to answer charges of usurpation of power in a distant forum. It was declared that "governmental regulations under present cir-

cumstances are so widespread and affect such a vast number of our people that those who in good faith believe a public official is proceeding beyond his jurisdiction should be permitted to litigate the question if the officer before the court is such an agent in the matter involved that it is reasonable to proceed to an adjudication of the issue with finality."

■ In the instant case, the United States Attorney for the forum district appeared for and vigorously represented the Inspection Supervisor against whom the injunction petition was filed. The War Food Administrator, had he desired, could have intervened. When the complaint is analyzed, its real challenge was to the power of the Administrator under the Tobacco Inspection Act to assign the additional set of inspectors to Glasgow. The petition distinctly charges that the action of the War Food Administrator was not only arbitrary and capricious, but in violation of the express provision of the Act of Congress; and, therefore, wholly void.

The District Judge appears to have ignored the allegation that the action of the Administrator was void, for his opinion states: "If, as charged in this case, the Administrator of the Tobacco Inspection Act has abused the discretion conferred upon him by the Statute by acting arbitrarily or capriciously, the power of the Court to enjoin such action for the relief of persons irreparably injured thereby is not doubtful, but the Administrator should be made a party defendant and given opportunity to set up his defense. He cannot be adjudged a wrongdoer in his absence. His presence before the Court is indispensable."

The fact that the District Court ignored the charge that the Administrator was acting in violation of the express provisions of the Act would seem to have caused his erroneous conclusion that the Administrator was an indispensable party. In conformity with our own opinions in Jarvis v. Shackelton Inhaler Co., supra, and Varney v. Wareheime, supra, we do not consider the War Food Administrator to be an indispensable party in the present circumstances.

■ But in our judgment, there are valid reasons for denial of the injunctive relief sought and the dissolution of the temporary restraining order entered in the state court. There being no statutory inhibition, the War Food Administrator was vested, under the broad powers contained in Section 14 of the Act, with discretion to assign the additional set of inspectors to Glasgow. The damage to the appellant, resulting from such action, was therefore damnum absque injuria. See Currin v. Wallace, 306 U.S. 1, 13, 18, 59 S.Ct. 379, 83 L.Ed. 441; United States v. Rock Royal Co-operative, Inc., 307 U.S. 533, 59 S.Ct. 993, 83 L.Ed. 1446; Isbrandtsen-Moller Co., Inc., v. United States, 300 U.S. 139, 145, 57 S.Ct. 407, 81 L.Ed. 562; Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543; Perkins, Secretary of Labor, v. Lukens Steel Co., 310 U.S. 113, 125, 60 S.Ct. 869, 84 L.Ed. 1108.

To issue injunctive process in the circumstances of the instant case would be to substitute the judgment of this court for that of the War Food Administrator in a matter in which that official is, by law, vested with discretion. To interfere in such case would be to interfere with the ordinary functions of government. See statement of Mr. Justice Lurton in Louisiana v. McAdoo, Secretary of the Treasury, 234 U.S. 627, 633, 34 S.Ct. 938, 58 L.Ed. 1506. See also National Life Ins. Co. of United States v. National Life Ins. Co., 209 U.S. 317, 325, 28 S.Ct. 541, 52 L.Ed. 808.

In Adams v. Nagle, 303 U.S. 532, 543, 58 S.Ct. 687, 693, 82 L.Ed. 999, the Supreme Court said: "It would be arbitrary, in the proper sense of the term, for an official to act in the teeth of a statute or stubbornly to refuse to act at all where a statute commands action, but where he essays to exercise the jurisdiction conferred upon him, though his errors may be subject to subsequent correction, they cannot be enjoined as an arbitrary exercise of his authority. To hold otherwise would render orderly administrative procedure impossible."

In the light of the statements by the Supreme Court in Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441, that the Tobacco Inspection Act establishes standards within the framework of which the administrative agent is to supply the details; and that, having an inadequate corps of experts to supply all the North Carolina markets, he selected those where there had been voluntary inspection under the prior Act and in doing so had not pursued an unreasonable course or acted in an arbitrary or capricious manner, there seems no

basis for the contention of the appellant that the action of the War Food Administrator in assigning, in his discretion, additional inspectors to Glasgow should be enjoined, even though appellant and other burley tobacco warehousemen at Horse Cave are materially damaged thereby. The situation presented here breaks down to a case of damnum absque injuria.

The interlocutory order of the District Court is affirmed.