CROSS et al. v. PACE, Secretary of the Army, et al.

Civ. A. No. 1551–52.

United States District Court District of Columbia.

July 1, 1952.

486

Murphy, Duiker, Smith & Burwell, Washington, D. C., for plaintiffs.

Charles M. Irelan, U. S. Atty., Ross O'Donoghue and Frank Strickler, Asst. U. S. Attys., and Thomas L. McKevitt, Atty., Dept. of Justice, Washington, D. C., for defendants.

PINE, District Judge.

Plaintiffs, who are citizens of the United States, own real property in the State of New York adjoining the south shore of Lake Ontario. By reason of the rising water level of the lake, their property and the properties of many others similarly situated, have been flooded and greatly damaged. Plaintiffs attribute the rise in the water level of the lake to the effects of a dam in the St. Lawrence River, many miles downstream. This dam, known as the Gut Dam, was built in 1903, nearly fifty years ago. It extends some 700 feet between two islands lying in the St. Lawrence River, namely Galop and Adams islands. It diverts water around one of them. It is partially on territory of the United States and partially on territory of the Dominion of Canada.

Prior to its construction, the statutory law forbade the construction of any dam in navigable waters of the United States until the consent of Congress thereto had been obtained and until the plans therefor had been approved by the Chief of Engineers and the Secretary of War, Act of March 3, 1899; 33 U.S.C.A. § 401.

In 1902 it was represented to Congress that Canada proposed to construct the dam in question with a view to improving navigation, and the consent of the United States was desired for the construction of that part which would be on United States territory. Responding to this representation, a statute was enacted, hereinafter referred to as the Enabling Act, giving such consent, provided that the type of dam and the plans of construction and operation were such as would not, in the judgment of the Secretary of War, materially affect the water level of Lake Ontario or cause other injury to the interests of the United States or its citizens, and provided further that the work of construction on United States territory should not be commenced until plans therefor were approved by the Secretary of War, Act of June 18, 1902, 32 Stat. 392.

Thereafter, the Secretary of War executed a paper writing, referred to by plaintiffs as a "permit," reciting that, in his judgment, the type of dam and plans of construction and operation were such as would not materially affect the water level of Lake Ontario or cause any other injury to the interests of the United States or its citizens, and certifying that, in accordance with the recommendations of the Chief of Engineers, he approved the plans, subject to the condition that if, after the dam had been constructed, it should be found that it materially affected the water levels of Lake Ontario or caused any injury to the interests of the United States, Canada should

make such changes as the Secretary might order, and subject to the further condition that, if the construction and operation of the dam should cause damage to the property of any citizen of the United States, Canada should pay such amount of compensation as might be agreed upon between Canada and the parties damaged or as might be awarded the parties in the proper court of the United States before which claims for damage might be brought.

In 1904, the Acting Secretary of War, after similar recitations, certified his approval of modified plans providing for raising the crest of the dam 2½ feet higher than shown on the original plans, and attached the same conditions.

Plaintiffs have sued the Secretary of the Army, the Secretary of Defense, and the Secretary of State. In their complaint, from which the foregoing facts are taken, the plaintiffs allege three "causes of action."

In their "First Cause of Action," plaintiffs claim that the Secretary of the Army has been "derelict in his duty" in failing to notify the Government of Canada to alter, destroy, or reconstruct the dam.

In their "Second Cause of Action," plaintiffs claim that if the Enabling Act is valid, the alleged failure of the Secretary of War to carry out the terms thereof has resulted in a lack of legal consent by the United States to the construction of the dam. From this they argue that the portion of the dam resting on United States territory is an illegal structure.

In the "Third Cause of Action," plaintiffs claim that the Enabling Act is unconstitutional, and for this reason the United States did not validly consent to the construction of the dam, causing the same to be an illegal structure so far as it rests on United States territory.

Plaintiffs pray for a mandatory injunction to compel defendants, "pendente lite and permanently," to order such alteration, destruction, or reconstruction of the portion of the dam resting on United States territory as may be necessary to lower the waters of Lake Ontario to their natural level and to serve notice of such order on the Canadian Government in accordance with the terms of the permits, and also to compel defendants to alter, destroy, or reconstruct such portion of the dam as may be necessary to so lower the waters of the lake. They likewise pray for a declaratory judgment setting forth the rights of the plaintiffs and the obligations of the defendants.

The defendants have moved to dismiss on the ground that the complaint fails to state a claim upon which relief can be granted, that the court is without jurisdiction of the subject matter, and that the action is a suit against the United States, which has not consented to be sued.

Taking up the "First Cause of Action," no duty to notify the Government of Canada to alter, destroy, or reconstruct the dam is imposed upon defendants under the Enabling Act. There is, however, a condition attached to the permits requiring Canada to make such changes as the Secretary of War may order, if it is found that the construction of the dam materially affects the water levels or causes injury to the interests of the United States. It will be noted that this obligation placed upon the Secretary relates to injury to the interests of the United States, which plaintiffs have no standing to assert. Furthermore, this obligation involves the exercise of discretion by the Secretary in making a determination of whether the dam materially affects the water levels of the lake or causes such injury. This is a complex question, and one peculiarly within the Secretary's administrative knowledge. In such circumstances and in the absence of any showing of abuse, the courts are without power to control the exercise of his discretion or substitute its own judgment for that of the Secretary. This is true whether the relief sought is described as a mandatory injunction or mandamus. The principle of law involved has been reiterated on many occasions, a recent example of which is found in Laughlin v. Reynolds, D.C.Cir., 196 F. 2d 863, 864, wherein the United States Court of Appeals for the District of Columbia, on May 1, 1952, held as follows:

"Because of the extraordinary nature of the remedy, the courts will al-

ways proceed with great caution before granting relief in the nature of mandamus. The person seeking relief must have a clear right to the performance of the act sought to be commanded. Supervisors v. United States, 1873, 18 Wall. 71, 85 U.S. 71, 21 L.Ed. 771; Ex parte Cutting, 1876, 94 U.S. 14, 24 L.Ed. 49; State of Louisiana v. McAdoo, 1913, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506; United States ex rel. Girard Trust Co. v. Helvering, 1937, 301 U.S. 540, 57 S.Ct. 855, 81 L.Ed. 1272. And the relief will be granted '* * * only where the duty to be performed is ministerial and the obligation to act peremptory and plainly defined.' United States ex rel. McLennan v. Wilbur, 1931, 283 U.S. 414, 420, 51 S.Ct. 502, 504, 75 L.Ed. 1148."

■■ It should also be pointed out that plaintiffs ask the court to direct defendants to make representations to a foreign government. In such matters, the courts are likewise without power. As stated in United States ex rel. Holzendorf v. Hay, 20 App.D.C. 576, affirmed on other grounds in 194 U.S. 373, 24 S.Ct. 681, 48 L.Ed. 1025, "The duty of righting the wrong that may be done to our citizens in foreign lands is a political one, and appertains to the executive and legislative departments of the government. The judiciary is charged with no duty and invested with no power in the premises."

■ With relation to the claim in the "Second Cause of Action" that the failure of the Secretary of War to carry out the terms of the Enabling Act resulted in the dam being an illegal structure, it need only be pointed out that the specifications of such failure are so frivolous as not to merit enumeration. But assuming that they are meritorious and that the dam is an illegal structure, Congress has set forth the procedure and forum for its removal in the Act of March 3, 1899, 33 U.S.C.A. § 406. The Act provides that such structures "may be enjoined by the injunction of any district court exercising jurisdiction in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the Attorney General". This court is therefore without jurisdiction to entertain such an action, the plaintiffs are not the proper parties to institute it, and they have not made the Attorney General a defendant herein in an effort to compel him to act.

■ The claim in the "Third Cause of Action" that the Enabling Act is unconstitutional is equally untenable. Art. I, Sec. 8, cl. 3 of the Constitution provides that "Congress shall have Power * * * To regulate Commerce with foreign Nations, and among the several States * * *." "The power to regulate commerce comprehends the control, for that purpose and to the extent necessary, of all navigable waters of the United States which are accessible from a State other than those in which they lie. For this purpose they are the public property of the nation, and subject to all the requisite legislation by Congress." Gilman v. City of Philadelphia, 3 Wall. 713, 18 L.Ed. 96. Acting under this power, Congress has enacted a statute requiring its consent before a dam may be constructed in a navigable river of the United States, 33 U.S.C.A. § 401, supra. The St. Lawrence River to the International Boundary being navigable waters of the United States, see The Montello, 20 Wall. 430, 22 L.Ed. 391, the Enabling Act here involved was required to give the necessary Congressional consent. It therefore clearly comes within the constitutional authority of Congress to regulate interstate and foreign commerce, and the claim of plaintiffs that the part of the river where the dam is constructed is not navigable would appear to be immaterial, inasmuch as this "dominant power of the federal Government, as has been repeatedly held, extends to the entire bed of a stream, which includes the lands below ordinary high water mark." United States v. Chicago, M. St. P. & P. R. Co., 312 U.S. 592, 596, 313 U.S. 543, 61 S. Ct. 772, 775, 85 L.Ed. 1064.

■ But plaintiffs claim that the Act is in reality a treaty, and is therefore unconstitutional as a usurpation of the President's treaty-making power. Art. 2, Sec. 2, cl. 2 of the Constitution. This, however, would seem to be disposed of by Altman & Co. v. United States, 224 U.S. 583, 32 S.

Ct. 593, 56 L.Ed. 894, and United States v. Curtiss-Wright, 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255, which recognized the validity of international agreements which do not rise to the dignity of treaties as an incident to the "conception of nationality." But here again, if it be assumed that the Act is unconstitutional, and therefore that the dam is an illegal structure, this court has no jurisdiction to entertain a suit for its removal for the reasons above stated.

So far as plaintiffs' claim to a declaratory judgment is concerned, the statute providing that remedy does not extend the jurisdiction of the courts beyond what it was before enactment, nor can it be used to give relief indirectly which could not be given directly. Clark v. Memolo, 85 U.S.App.D.C. 65, 174 F.2d 978, and cases cited. Therefore, relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, is not available.

Plaintiffs appear to be seriously damaged. It is not for me to say, if they can prove the facts they allege, whether they have a remedy in the Court of Claims or elsewhere, or whether they should seek relief in Congress or by making further representations to the Executive Branch of the Government; but it is clear to my mind that this court is powerless to grant them the relief prayed for, under the law, and their complaint must therefore be dismissed.

Counsel will submit appropriate order.