The **DANVILLE TOBACCO ASSOCIATION** a Virginia corporation, Virginia Farm Bureau Federation, a Virginia corporation, W. N. Terry and George A. Myers, Jr., Plaintiffs,

v.

Orville L. **FREEMAN**, as Secretary of the Department of Agriculture of the United States of America, and Stephen E. Wrather, as Director, Tobacco Division, Consumer and Marketing Service of the United States Department of Agriculture, Defendants.

**Civ. A. No. 67-C-52-D.**

United States District Court
W. D. Virginia,
Danville Division.

Oct. 24, 1967.

William C. Battle, Lloyd T. Smith, Jr., McGuire, Woods & Battle, Charlottesville, Va., and John W. Carter, Carter & Wilson, Danville, Va., for plaintiffs.

Thomas B. Mason, U. S. Atty., Roanoke, Va., and John C. Chernauskas, U. S. Dept. of Agriculture, Office of Gen. Counsel, Washington, D. C., for defendants.

## OPINION AND JUDGMENT

DALTON, Chief Judge.

■ Although the District Court is of the opinion that the poundage-basket method has merit, the Court declines to grant the relief prayed for in this proceeding, because:

■ (1) The Court has misgivings as to whether the duties of the Secretary of Agriculture in the grading of tobacco are ministerial. As hereinafter mentioned we are unaware of any decision squarely in point. We lean to view that the service of the Secretary in this field is discretionary, in which event mandamus will not lie.

■ Plaintiff here seeks to have the court direct the defendant to inspect the tobacco marketed in accordance with the marketing regulations as independently established by the plaintiff Danville Tobacco Association. This raises the question whether the defendant's powers to inspect and grade tobacco under the Act are discretionary or ministerial. If the defendant's power is only discretionary, the relief prayed for must be denied. The well established rule is that courts have no power to compel a public officer to perform a function of his office that is purely discretionary. United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 51 S.Ct. 502, 75 L.Ed. 1148 (1931). Work v. United States ex rel. Rives, 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561 (1925); State of Louisiana v. McAdoo, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506 (1914). In *McAdoo*, supra at 633, 34 S.Ct. at 941 the court said:

"There is a class of cases which hold that if a public officer be required by law to do a particular thing, not involving the exercise of either judgment or discretion, he may be required to do that thing upon application of one having a distinct legal interest in the doing of the act. Such an act would be ministerial only. But if the matter in respect to which the action of the official is sought is one in which the exercise of either judgment or discretion is required, the courts will refuse to substitute their judgment or discretion for that of the official intrusted by law with its execution. Interference in such a case would be to interfere with the ordinary functions of government. (citing cases)."

This rule applies "whether the relief sought is described as a mandatory injunction or mandamus." Cross v. Pace, 106 F.Supp. 484, 487 (D.D.C.1952).

As to this question the court has found no case which specifically holds that the Secretary's power to inspect is either discretionary or ministerial. We, however, find that the cases tend to indicate that the Secretary's powers to inspect are discretionary. Greer v. Cline, 148 F.2d 380 (6th Cir. 1945) involved a suit challenging the power of the Administrator of the Tobacco Inspection Act to assign inspectors under the Act. There the Administrator of the Tobacco Inspection Act had appointed an additional set of inspectors to inspect and certify tobacco in a competing tobacco auction market. The plaintiff sought to enjoin the War Food Administrator who had been appointed under the War Powers Act, 50 U.S.C.A. App. § 601 et seq. (since repealed) to administer the Tobacco Inspection Act, from assigning additional inspectors to the competitor market. The Court in denying the injunctive relief held that the Administrator's power to appoint additional inspectors under the Act was discretionary. The Court said:

"But in our judgment, there are valid reasons for denial of the injunctive relief sought and the dissolution of the temporary restraining order entered in the state court. There being no statutory inhibition, the War Food Administrator was vested, under the broad powers contained in Section 14 of the Act, with *discretion* to assign the additional set of inspectors to

Glasgow. * * * (Emphasis added)

"To issue injunctive process in the circumstances of the instant case would be to substitute the judgment of this court for that of the War Food Administrator in a matter in which that official is, by law, vested with *discretion*. To interfere in such case would be to interfere with the ordinary functions of government." 148 F.2d at 384 (Emphasis added).

In Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441 (1939) the Supreme Court in upholding the constitutionality of the Act also said that the Secretary's power to designate auction markets under § 511d was discretionary. The Court said:

"The Secretary of Agriculture is authorized to designate those markets where tobacco bought and sold thereon at auction moves in commerce. Sec. 5. This calls for the ascertainment of a fact. The intention of Congress is clear that markets thus ascertained shall be designated subject to the prescribed conditions and as rapidly as facilities for inspection are available. We find no unfettered discretion lodged with the administrative officer." 306 U.S. at 17, 59 S.Ct. at 388.

In Fayette Tobacco Warehouse Co. v. Lexington Tobacco Bd. of Trade, 299 S.W.2d 640, 641 (Ky.1956) the language of the court suggests that the inspection service is offered in the exercise of the Secretary's discretion. The court said:

"Traditionally, the Secretary has cooperated with all local tobacco boards of trade with respect to the conduct of auction sales in states where burley tobacco is sold. Prior to such cooperation, the local plan of operation is examined from the standpoint of equitable treatment of all groups concerned to determine whether such plan would result in orderly marketing and effectuate the purposes of the Act. After such a determination has been made by the Secretary or his representative, official inspectors are made available to inspect the tobacco to be sold at auction under such system."

Furthermore, the tone in which the Act is written tends to indicate that the defendant's powers are discretionary. For example, the phrase, "The Secretary is authorized" which the Supreme Court in Currin, supra, interpreted to be \a phrase of discretion is used throughout the Act. See § 511b; 511c; 511d; 511e; 511h; 511j; 511m. And § 511m empowers the defendant to make any rules and regulations he deems necessary to carry out the purposes of the Act. "The Secretary is authorized to make such rules and regulations and hold such hearings as he may deem necessary to effectuate the purposes of this chapter and *may* cooperate with any other Department or agency of the Government * * *." § 511m (Emphasis added) In view of the fact that the Act was passed mainly for the protection of the tobacco growers, it seems reasonable to conclude that the defendant would be given discretion to take whatever steps were necessary to that end.

(2) Injunctive or mandamus relief, an extraordinary remedy should only be granted when the circumstances clearly justify it. This case falls short of such requirement.

(3) Notwithstanding the question of whether the services are ministerial or discretionary, the court feels that it should not undertake to disturb the status quo at this stage of the tobacco marketing season.

The Bright Belt Warehouse Association, Inc., organized April 12, 1945 is composed by members from Georgia, Florida, South Carolina, North Carolina and Virginia producing flue-cured tobacco. This association has adopted rules and regulations in May, June or July of each year relating to marketing and to date these regulations have been followed, and the grading service of the Department of Agriculture has co-operated in the enforcement of such regulations. The marketing in Florida, Georgia, South Carolina, has been completed for the 1967 season. Eastern North Carolina is large-

ly completed, leaving only a part of western North Carolina. Virginia marketing is well underway. It would hardly seem appropriate to the Court to change the rules after the "game" of marketing in the flue-cured areas has almost run its course for the year 1967.

All these years the entire area has kept in step with the rules and regulations adopted by the Bright Belt Warehouse Association, approved by the Department of Agriculture, and such rules were generally publicized in May, June or July of each year. To wait until October (in a season that runs for the industry from the last of July to the first part of January) to promulge a new plan does not appear to this court to be the correct approach.

(4) For the District Court to grant the relief asked for would be to partially destroy one of the basic reasons underlying the joining together and the co-operation of the interested parties—that is uniformity. The tobacco industry, like others in our economy, has many pressing problems. From the planting of the tobacco seeds to the consumer there is regimentation and government control, and private enterprise and private initiative are largely out the window, except that monopoly and restraint of trade are prohibited. The tobacco growers and warehousemen and the government have all recognized the value of uniformity in this billion dollar business, and have severally profited from the uniformity during the past twenty-one years in which they have been following the selling rules and regulations of the Bright Belt Association. Inspection Service has been provided by the Department of Agriculture on a uniform basis, co-operating with the Bright Belt rules. For the District Court to change the rules at this late hour in the overall picture would be to destroy this uniformity which has been of such great value to the producers and warehousemen as a whole.

(5) The Court is unable to see the irreparable injury asserted that will occur by continuing through the present season to operate under the rules in force.

Such damages claimed are at best obscure and speculative. Who knows but that a local option system installed by Court edict after two-thirds of the selling season is over, and contrary to the willingness of the Secretary of Agriculture to voluntarily provide the necessary inspection service, might be more confusing and damaging than continuing the present method for the 1967 season.

(6) In fact, there appears to be considerable inconsistency in the position of plaintiffs. The Court notes that on September 12, 1967 (See Exhibit A) the Danville tobacco warehousemen notified the Department of Agriculture that they intended "during the 1967 season to market tobacco with a maximum weight per basket of three-hundred pounds."

Surprisingly, they gave as their reasons for increasing the weight per basket from two-hundred pounds to three-hundred pounds the *very same* reasons that are now being urged on the Court as the basis for reducing the weight to less than two-hundred pounds.

Moreover, the Flue-Cured Marketing Committee's suggestion of 2300 baskets per day, with Danville's proposal of 2200 baskets per day, with other markets at 2000 baskets per day demonstrates lack of unanimity on the problem. "Every man for his own" will probably generate other suggestions. The Court firmly believes that those and other issues which may arise should be submitted to all parties in interest and hammered out on the anvil of debate, and once the decision is made, that the parties work together in harmony. Otherwise, in the competitive struggle for existence that confronts the tobacco interests, chaos will result.

(7) As before stated, the Court feels that the basket-poundage suggestion is meritorious, but at the same time the Court believes that its installation should await the painstaking consideration of not only the Bright Belt Association but also the fully considered action of the Flue-Cured Marketing Committee, and the Secretary of Agriculture, and each and all of those parties who are vitally interested in this problem. This can well

**354**

be accomplished and publicized in advance of the 1968 season, and thus the tobacco growers, the warehousemen and the Department of Agriculture can join hands and march together in what the majority may determine as the most reasonable and equitable basis of marketing and thus continue a uniform system. This procedure in the long run will promote rather than retard the interests of the growers and warehousemen.

For the foregoing reasons, the relief prayed for by plaintiffs is denied, and it is so adjudged and ordered. The case is dismissed and each party shall pay their own costs.