**FUQUAY–VARINA TOBACCO BOARD OF TRADE**, Dan Brisson, Waverly Akins, J. W. Dale, Joe T. Roberts, and Everett Clayton, Plaintiffs,

v.

Clifford M. **HARDIN**, Secretary of Agriculture of the United States, Defendant.

Civ. No. 2578.

United States District Court,
E. D. North Carolina,
Raleigh Division.

Aug. 5, 1970.

J. Meliville Broughton, Jr., of Broughton & Broughton, Raleigh, N. C., for plaintiffs.

Warren H. Coolidge, U. S. Atty., E. D. N. C., Raleigh, N. C., John C. Chernauskas and Daphne Anderson, U. S. Dept. of Agriculture, Washington, D. C., for defendant.

## OPINION and ORDER

LARKINS, District Judge:

This cause is before the court as a Motion for Preliminary Injunction, seeking relief in the nature of mandamus, requiring and directing the defendant, in his official capacity, to furnish inspection and grading services to the plaintiffs in time for the grading of tobacco to be sold on such market and at such warehouses as are owned or controlled by plaintiffs, beginning with the opening date of the 1970 tobacco marketing season for the so-called Eastern (North Carolina) Belt as such date may be determined by the Industry-Wide Flue-Cured Tobacco Marketing Committee or as determined by the industry or other group having authority in such matters.

Issues have been joined by the defendant's Motion to Dismiss for failure to state a cause of action upon which relief may be granted and defendant's briefs in support thereof.

Jurisdiction over the cause is vested in the court pursuant to the provisions of Title 7, United States Code Annotated, Section 511; the Tobacco Inspection Act.

## SUMMARY AND CONCLUSIONS OF LAW

The plaintiff, Fuquay-Varina Tobacco Board of Trade, is a non-profit corporation established by Chapter 55A of the General Statutes of North Carolina, with its registered office located at Fuquay-Varina, North Carolina, and is a trade association organized and consisting of individual plaintiffs to this action and others through which an effort is made to promote the development of a tobacco auction market at Fuquay-Varina.

For the life of the Fuquay-Varina tobacco auction market, it has been officially designated by the defendant or his predecessors as an auction market of the Middle (North Carolina) Belt. Contending their uniqueness as an auction market of the Middle Belt, plaintiffs are now before the court seeking in effect to be classified as an auction market of the Eastern (North Carolina) Belt, at least for the purposes of the granting of grading and inspection services by the Secretary of Agriculture. In support of their claim for relief, plaintiffs assert the similarity in soil, climate and maturity date conditions in the Fuquay-Varina area and that of other areas within the Eastern Belt, and the dissimilarity of those same conditions with areas under the control of the Middle Belt Association.

Plaintiffs assert that they are being irreparably damaged by the fact that they are required to open their warehouses for sale approximately two weeks after the markets of the Eastern Belt are allowed to commence due to the fact that tobacco in their area has been ready for sale for a period coinciding with tobacco grown in the Eastern Belt, and thusly much of the tobacco which would otherwise come to their market has already been sold in the Eastern Belt Warehouses.

Plaintiffs' assertions of the uniqueness of the Fuquay-Varina tobacco marketing area in its similarity to those areas of the Eastern Belt are without significance in this matter, in regard to

soil, climate and maturity date conditions; principally, in light of the testimony presented at the court's hearing of this matter In Chambers, Trenton, North Carolina on July 29, 1970. There, witness testimony indicated the following:

(1) That soil conditions (without the addition of nutrients et cetera, by man) have little to do with tobacco maturity dates;

(2) That climate and soil conditions of many areas of the Middle Belt are as similar to Fuquay-Varina as are areas of the Eastern Belt;

(3) That soil conditions may vary widely on a single farm, or in a single field or crop;

(4) That tobacco grown throughout the flue-cured area is of the same type as that grown in Fuquay-Varina, and is interchangeable between markets;

(5) That certain percentages of tobacco in each belt mature at approximately the same time;

(6) That at least three Middle Belt areas, Sanford, Carthage and Aberdeen, experience tobacco maturity coinciding with that of the Fuquay-Varina area; and,

(7) That, therefore, Fuquay-Varina is not unique in the Middle Belt, to any extent.

■ As to plaintiffs' assertions that they are being damaged by the late openings with which they must comply, the court finds that plaintiffs' contentions that they are losing what they regard as an apparently guaranteed area-clientele of growers due to the fact of opening after the Eastern Belt, to simply be contrary to fact. Plaintiffs' witness, Mr. Arnold, a tobacco grower, testified in effect that farmers will travel any distance necessary in order to (1) get the required warehouse space and (2) obtain the best price for their crop. These are the important considerations to the tobacco grower, and the proximity of the auction market to their farms is a secondary consideration. There is no guaranteed clientele in the Fuquay-Varina area for plaintiffs.

■ Plaintiffs contend that the Fuquay-Varina auction market has suffered an unconscionable loss of volume of tobacco marketed since 1962. Reasons for this loss are shown by "Exhibit 12" attached to the affidavit of Mr. Grange. All multiple sale markets, in both the Eastern and Middle Belts, have suffered a similar decline in volume of tobacco marketed. That the loss experienced in Fuquay-Varina has been more severe than that felt by other auction markets is unfortunate. But this loss was neither enhanced nor diminished by the fact that Fuquay-Varina is in the Middle Belt as opposed to the Eastern Belt.

■ The Tobacco Inspection Act is a tobacco grower's act, not a warehouseman's act. (See House Report 1102 on H.R. 8026 and Senate Report No. 1211, 74th Cong. First Session). The act was passed to protect growers who were being victimized because of abuses and practices by elements within the auction system, including but not limited to warehousemen. (Ibid.)

Although it is mandatory that inspection and grading services be provided by the Secretary of Agriculture to designated markets, Section 511m of Title 7, U.S.C.A., provides as follows:

" The Secretary is authorized to make such rules and regulations and hold such hearings as he may deem necessary to effectuate the purposes of this chapter and may cooperate with any other Department or agency of the Government; any State, territory, district, or possession, or department, agency, or political subdivision thereof; purchasing and consuming organizations, boards of trade, chambers of commerce, or other associations of business men or trade organizations; or any person, whether operating in one or more jurisdictions in carrying on the work herein authorized; * * * "

"In view of the fact that the Act was passed mainly for the protection of the tobacco growers, it seems reasonable to conclude that the defendant (Secretary of Agriculture) would be given discretion to take whatever steps were necessary to that end." Danville Tobacco Association v. Freeman, 275 F.Supp. 350 (D.C.W.Va.)

In Border Belt Warehouse Association, Inc. v. Hardin (Fayetteville Division, No. 883-Civil, August 4, 1969), this court, Honorable Algernon L. Butler, Chief Judge, United States District Court for the Eastern District of North Carolina, Judge Presiding, held that the Secretary's legal duty to furnish tobacco inspectors was not discretionary under the facts in that case. There, the plaintiff was an association representing a marketing belt. The defendant, Secretary of Agriculture had, in every year since 1959, provided inspectors to the different belts on the opening dates set by the respective belt associations. It was stipulated in the case that personnel required for inspection were available to the defendant, however the Secretary proposed to supply inspectors for all Border Belt markets on July 28, 1969, as had been recommended by the industry-wide committee, rather than on the date selected by the belt association of July 23, 1969. This court ordered the Secretary to supply inspection and grading services to all Border Belt markets on July 23, 1969, the opening date set by the belt warehouse association.

■ There, the court was preserving the status quo by issuing its injunction, since each belt had in the past set its own opening date, whereas, in the instant case, plaintiff is an individual market which has never before set its own opening date and has always opened with the Middle Belt markets. The court finds the above sufficient to distinguish the *Border Belt* case from the case at bar. The court here finds that the Secretary of Agriculture has the discretion to determine whether or not inspection or grading services are to be provided to an individual market, where

that market seeks to open on a date different than that set by either the Industry-Wide Flue-Cured Tobacco Marketing Committee or the respective belt associations for the market in question.

Inspection and grading services must be granted by the Secretary of Agriculture. But it is clear that the declared intent of the Congress of the United States, in passing and creating the Tobacco Inspection Act, was to add order to what had in the past been chaotic marketing conditions. The tobacco growers had to be protected. All tobacco markets would like to open at the same time, in doing so the market competition would be more balanced. However, as was explained by several witnesses in the hearing of this matter, if simultaneous openings of all markets were allowed, the result to the farmer would be catastrophic. The re-drying facilities which initially process tobacco after sale in the warehouses simply cannot process this perishable commodity as quickly as the warehouses can in toto handle the sale of same and purchase. Buyers would select markets, not attend others, and the growers would suffer.

The court is sympathetic with the assertions of plaintiffs that to allow it, an individual market, to open two weeks earlier could not operate to create chaotic conditions, but in allowing Fuquay-Varina to select its own opening date, which would be the effect of such an order, the court would be taking from the Secretary that degree of discretion necessary to add order to an otherwise unordered system.

■ Sub-section 511m of Title 7, U.S.C.A., gives the Secretary the authority to cooperate with industry associations and committees. In this cooperation, he is required by that title and section, to provide inspection and grading services to all designated markets. In his cooperation with the industry-wide committees and belt associations, the Secretary of Agriculture, in the case at bar, is not required to furnish these services to Fuquay-Varina until the opening date

**370**

set by the Industry-Wide Flue-Cured Tobacco Marketing Committee for the Middle Belt.

Plaintiffs' relief lies in acceptance by the Eastern Belt Association. If plaintiffs have been rejected, then the institution of an action at bar against the Eastern Belt is where relief may be found.

Tobacco marketing now has systems and institutions for the fair and equitable sale, purchase and processing of that commodity. Those systems and institutions should be looked to for any relief sought.

■ The court finds that the Secretary of Agriculture has the discretion to furnish or refuse to furnish inspection and grading services in the case at bar. This decision need go no further. The court further finds that there has been no abuse of discretion in the case at bar. And therefore a preliminary mandatory injunction, in the nature of mandamus, cannot issue. Lazar v. Benson, D.C., 156 F.Supp. 259; Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788; Work v. Rives, 267 U.S. 175; State of Louisiana v. McAdoo, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506; Cross v. Pace, D.C., 106 F.Supp. 484.