J. W. BARTON, Jr., et al., Plaintiffs,

v.

Robert BERGLAND, Secretary of Agriculture of the United States of America, Defendant.

No. 77–190.

United States District Court,
E. D. Kentucky,
Lexington Division.

Jan. 12, 1978.

Robert M. Odear, Louie B. Nunn, Joseph L. Arnold, Kent Masterson Brown, Joseph C. Rice, Lexington, Ky., for plaintiffs.

Patrick H. Molloy, U. S. Atty. by John A. West, Asst. U. S. Atty., Lexington, Ky., for defendant; Edward M. Silverstein, Atty., Marketing Division., U. S. Dept. of Agriculture, Washington, D. C., of counsel.

## MEMORANDUM OPINION

SILER, District Judge.

After a hearing on this case, the Court makes the following findings of facts and conclusions of law upon the various motions made by the parties.

## FINDINGS OF FACTS

Plaintiffs are Kentucky farmers who desire to market their burley tobacco in "looseleaf" form at auction through tobacco warehouses. However, the defendant, Secretary of Agriculture (hereinafter "Secretary"), pursuant to the authority given him in the Tobacco Inspection Act (hereinafter the "Act"), 7 U.S.C. § 511 et seq., has promulgated regulations in 7 C.F.R. §§ 29.-3001–3182 that before burley (type 31) tobacco can be graded by tobacco inspectors for the United States Department of Agriculture (U.S.D.A.), it must be tied in "hands," a traditional method of attaching tobacco leaves together.

Before any tobacco is sold on the auction market, the U.S.D.A. inspectors must pass down the line of "baskets" of tobacco and designate a grade on each particular basket. The grade assists the buyers in determining the quality of a certain lot or basket of tobacco. Additionally, as a benefit to the grower (farmer) of tobacco, all graded tobacco receives price supports. Thus, if graded burley tobacco sold at auction does not bring a given price, then the burley is purchased by the Burley Tobacco Growers' Cooperative Association which administers a "pool" under the U.S.D.A. price support system, resells it later and pays the grower the difference between the amount paid under the price support system and the price the burley sold for at a later time.

The Secretary asserts that when he puts a "No-G" (for "No-Grade") on the baskets, he is grading the tobacco, but that is incorrect. By its own definition, "no-grade" means it has no grade, 7 C.F.R. § 29.3040, and "Grade" is a "subdivision of a type according to group, quality, and color." 7 C.F.R. § 29.3026. By its Rule 23, 7 C.F.R. § 29.3126, it calls "No-G" a grademark, but that avoids the obvious, that the designation is entirely descriptive.

This price support system basically sets a floor for the auction price of burley, as the buyers know if they do not bid a given price, then the burley will be placed back in the pool, and farmers know they will receive a minimum price for their marketed tobacco. Therefore, it is significant to the farmer to have his tobacco graded so that he can be entitled to price supports. He can still sell looseleaf tobacco at auction in the warehouses, but it may not bring the price of the bundled (tied in hands) tobacco because the buyers do not have to meet the price support base in order to buy tobacco in that form.

The plaintiffs have attempted to sell looseleaf tobacco on the market in Lexington this season and the price bid was 35 cents per pound or either no bid at all was made. At the same time, they offered for sale tobacco similar in quality but tied in hands and that brought $1.25 per pound in bids. It costs the plaintiffs some additional 6 to 10 cents per pound to tie the tobacco in hands as against selling it looseleaf. Thus, it would save the plaintiffs from $8,316 to $13,860 for the marketing year to sell their tobacco looseleaf, as they own or lease a total of 138,000 pounds of burley. Last tobacco season, the burley market had an experiment in preparing tobacco for marketing and marketing it in warehouses. It

was sold in "bales" or "sheets" and brought for the plaintiff, J. W. Barton, Jr., from $1.08 to $4.00 more per hundred-weight than did his bundled tobacco. However, that looseleaf tobacco was sold with the cooperation of the tobacco companies and could not be considered a valid auction in the true meaning of the word.

Although the tobacco buyers appear not to want to bid on ungraded burley in Kentucky, looseleaf, ungraded burley has been sold in Tennessee at warehouses at comparable prices to bundled and graded burley. Some warehouses deem it would be a burden to handle tobacco in looseleaf sheets or bales, as burley sold in sheets averaged 170 pounds per lot; in bales, 640 pounds per basket; and in bundles, some 450 pounds per basket. Thus, there might have to be more floor space to accommodate looseleaf burley sold in sheets. However, most of the warehouses do not work a full day and there is no proof that they operated at capacity much of the time. There is no reason the warehouses could not accommodate the tobacco being sold looseleaf. One warehouse operator said that he would welcome such sales. At least one in Tennessee has encouraged this procedure. However, no warehouse would be forced to sell burley looseleaf. It is logical to suppose that if several participated in such sales, most of the warehouses would follow, for it is a competitive business.

The defendant asserts it would require additional inspectors to grade looseleaf tobacco, and the Court finds this to be so, as it takes more time to grade a basket of looseleaf tobacco than it does to grade a basket of bundled tobacco. On the other hand, it would have little impact on the market at this time, as about 65 per cent of the burley to be marketed was tied in hands by the time of the hearing in this Court before Christmas, and 80 to 85 per cent of the burley was sold before Christmas, leaving only about 15 to 20 per cent of the total market of about 640 million pounds to be sold as of the time of this decision.

Nevertheless, there are additional problems which are genuine if this Court were to issue a preliminary injunction. These include the hiring of additional graders during the 1978–79 winter sales season, providing uniform standards for baskets of sheets and bales at the warehouses, and meeting the additional costs for the cooperative in processing the looseleaf tobacco before re-selling it. An additional problem arises for the tobacco companies, which desire all the tobacco leaves to be laid parallel, so that the tips can be cut off initially in the processing. However, as this is not for the benefit of the growers (unless it affects the price), that is not considered as being a problem, as the Act was passed mainly for the protection of the growers. See *Danville Tobacco Ass'n v. Freeman,* 275 F.Supp. 350 (W.D.Va.1967).

Although the plaintiffs urge that the Secretary is discriminating against them by requiring them to tie their tobacco in hands before grading and does not require growers of other types of tobacco to bundle their tobacco in this method, that is incorrect. The regulations allow flue-cured tobacco to be sold looseleaf, but all other types of tobacco must be tied in hands similar to that required for burley sales. The flue-cured program is different from burley's and was phased in gradually over a period of years from hand-tied to looseleaf.

There is now set up a committee to study the problems and ramifications of switching the burley market to looseleaf and it is to submit its proposal to the Secretary in time for the 1978–79 season. All segments, including farmers, warehouse operators, dealers, and buyers, of the tobacco industry are represented on this committee. It is the policy of the Secretary not to change regulations until all segments of the industry are consulted, and this is proper. See 7 U.S.C. § 511m.

The Court is very much in sympathy with the plaintiffs desiring to exercise their rights to sell tobacco without restrictions on the form of the burley as it is brought to market. That is important, but plaintiffs can still sell tobacco looseleaf. The only restriction is the lack of price supports. That, of course, is essential to their getting

good prices on tobacco sold in Kentucky, but it is not a nationwide problem. Citizens often feel constrained by too many governmental regulations on their lives, but certain rules are of benefit to them. For instance, the tobacco marketing system was in chaos with the farmers receiving little for their labor until price supports and selling restrictions were put into effect. See *Fuquay-Varina Tobacco Board of Trade v. Hardin,* 316 F.Supp. 366 (E.D.N.C.1970). Thus, restrictions on tobacco poundage sold was upheld as being within the Commerce Clause of the Constitution in *Mulford v. Smith,* 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092 (1939). Certainly, this is an infringement on the liberty of an individual grower but was set up to protect the common good for the tobacco farmers.

Periodically, burley farmers are given the right to vote on whether to abolish poundage allotments (it was changed from acreage allotments several years ago), and they have ratified the current system. Additionally, burley farmers (at least the plaintiffs) would not advocate the abolition of the price support system. Thus, an orderly and uniform system is greatly needed and has been followed by the Secretary to insure the maximum benefit to the farmers. Therefore, the Secretary's decision to keep the present regulations until the industry presents proposals for a change in the preparation and sale of burley is not arbitrary or capricious, as plaintiffs maintain. It may not be in accordance with the desires of the plaintiffs or even the way the Judge of this Court would administer it, but this Court cannot substitute its personal preference for the Secretary's.

## CONCLUSIONS OF LAW

■ The plaintiffs seek a preliminary injunction in the manner of a mandamus. Even where styled as a request for a preliminary injunction, if the case requests the governmental officer to take certain action, it may be determined to be an action for mandamus. See *Panama Canal Co. v. Grace Line, Inc.,* 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958). Thus, if the action seeks to compel the Secretary to take certain actions, his duty must be ministerial not discretionary, for mandamus to be available as a remedy. *Id.* Here, it involves a discretionary act by the Secretary and is based upon the authority given him by Congress in the Tobacco Inspection Act of 1935, 7 U.S.C. § 511 *et seq.* As the Court has found the action taken was not arbitrary, capricious or discriminatory, as alleged by the plaintiffs, then no action lies against the Secretary to compel this change in grading of burley tobacco.

In related cases, it has been held that certain powers of the Secretary under the Tobacco Inspection Act are discretionary. Thus, the rules promulgated for pounds of tobacco per basket in the flue-cured market are discretionary, see *Danville Tobacco Ass'n v. Freeman, supra.* Likewise, the designation of tobacco auction markets by the Secretary is a discretionary function. See *Currin v. Wallace,* 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441 (1939). Similar are the powers of the Secretary to assign tobacco inspectors or graders to a particular market, *Greer v. Cline,* 148 F.2d 380 (6th Cir. 1945); and to set the dates for marketing of tobacco, see *Fuquay-Varina Tobacco Board of Trade v. Hardin, supra.*

■ In order for the plaintiffs to obtain relief in the form of a preliminary injunction, they must demonstrate a probability of success on the merits. See *Garlock Inc. v. United Seal, Inc.,* 404 F.2d 256 (6th Cir. 1968). In view of the discussion *ante,* there is little likelihood of success at the trial. Other factors which govern whether a Court will grant preliminary relief are set out in *Virginia Petroleum Jobbers Ass'n v. Federal Power Commission,* 104 U.S.App. D.C. 106, 259 F.2d 921 (1958), and include whether the plaintiff has shown irreparable injury, that the relief would not substantially harm other parties interested in the proceedings, and that the public interest is served by the relief sought. Plaintiffs have shown that if relief is not granted in the form of injunctive relief, they will be irreparably harmed by the loss of money required to pay for labor in tying burley

tobacco in hands, as there appears no way to recoup this loss by a claim for damages against the Federal Government. No alternate remedy at law has been suggested by the Secretary in this case.

On the other hand, there may be some harm to others interested in the litigation if this relief is granted. Some tobacco warehouse operators and dealers assert they cannot immediately cope with a full loose-leaf market. They claim they do not have the warehouse space or equipment to handle it. Although this Court has already found the warehouses can handle the 1977–78 potential looseleaf market, it is likely that the co-operative would not have enough workers to process loose-leaf tobacco in the middle of the season. Finally, the public interest appears to be best served by allowing the Secretary to consult all segments of the tobacco industry to set up an orderly and systematic marketing of tobacco, and this would not be the result if this Court granted relief at this time. *Cf. Danville Tobacco Ass'n v. Freeman, supra.*

As said in *Danville Tobacco Ass'n v. Freeman, supra* at 352: "Injunctive or mandamus relief, an extraordinary remedy should only be granted when the circumstances clearly justify it." As in that case, when the Court has weighed all the factors concerned, the relief requested is not justified.

Moreover, as the remedy requested is in the form of a mandamus of an official in a discretionary act, the motion by the Secretary to dismiss for failure to state a claim upon which relief can be granted would be sustained pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, but inasmuch as matters outside the pleadings were presented and were not excluded by the Court, the motion shall be treated as one for summary judgment, pursuant to Rule 56, Federal Rules of Civil Procedure. As in *Danville Tobacco Ass'n v. Freeman, supra,* it is felt that the suggestion by the plaintiffs is meritorious, but that program should be implemented only after the plan has been set in motion by the considered action of all persons involved in the industry.

The Court commends the attorneys on both sides for excellent presentation of the case in both oral and written arguments for their respective positions.